Shaw, C. J.
Three writs of error are brought in the present case, to revise, and, if erroneous, to reverse and set aside three judgments, rendered against the plaintiff in error, by the court of common pleas, held at Lenox, March Term 1850.
The error assigned is, that the plaintiff was charged in three several indictments, for passing and uttering counterfeit bank bills, and was convicted on each, and sentenced to a distinct term of imprisonment on each, amounting in the whole to a term a little over eight years, when, by force of Rev. Sts. c. 127, § 7, a consolidated judgment should have been rendered on the three convictions, that he should be deemed a common utterer of counterfeit bills, and sentenced to a term of imprisonment in the state prison, not exceeding ten years.
In an analogous case of convictions on three indictments for larceny, at the same term, the only and regular legal judgment was, the consolidated judgment and sentence to one term of imprisonment. Haggett v. Commonwealth, 3 Met. 457.
We have heretofore decided in a similar case, that, upon the reversal of a judgment in a criminal case, the court here had no authority, at common law, to enter a new judgment, such as the court of common pleas should have rendered. Shepherd v. Commonwealth, 2 Met. 419.
*280 This point, whether supported by precedent or not, has become of less importance since St. 1851, c. 87, upon the right construction of which this case must be decided. It provides as follows : —
“ Whenever a final judgment in any criminal case shall be reversed by the supreme judicial court, upon a writ of error, on account of error in the sentence, the court may render such judgment therein as should have been rendered, or may remand the case for that purpose to the court before whom the conviction was had.”
It was very fully argued by the plaintiff’s counsel, that this act cannot be construed so as to affect the plaintiff, without being construed to be a retrospective act, and that such a construction would be opposed to the true principles of the constitution, and to all the great maxims of justice and proper legislation. We must, then, consider what the provisions of this act are. They relate simply to errors in the imposition of sentences, in cases where neither the law, nor the evidence upon which the convictions rest, is in any respect impugned, where the original process is right, the facts sufficient and regularly proved, and all the proceedings, up to the sentence, were right, and where the alleged error is in the sentence only. Now is this act retrospective or prospective ? It certainly refers in its terms to the future, and to writs of error thereafter to be brought. It was competent for the legislature to take away writs of error altogether, in cases where the irregularities are formal and technical only, and to provide that no judgment should be reversed for such cause. It is more favorable to the party, to provide that he may come into court upon the terms allowed by this statute, than to exclude him altogether. This act operates like the act-of limitations. Suppose an act were passed, that no writ of error should be taken out after the lapse of a certain period. It is contended that such an act would be unconstitutional on the ground that the right of the convict to have his sentence reversed upon certain conditions had once vested. But this argument overlooks entirely the well-settled distinction between rights and remedies.
*281 The argument assumes that this act is retrospective, and then it is attempted to support it by a great many authorities, which go very strongly to show, that retroactive acts are contrary to the first and most deeply laid principles of legislation, and of common right. But these authorities apply chiefly to two well-defined classes of cases; 1st, to ex post facto laws, and 2d, to laws passed to take away rights existing and vested at the time of their enactment. It will not do to call an act retroactive, and then to produce the opinions of statesmen, historians and judges, on the subject of the two classes last mentioned, as proving its unconstitutionality. Ex post facto laws are understood to be laws to punish, as criminal or penal, acts which were not criminal, or not offences, at the time they were done, or which, if criminal or penal, were not subject to penalties so high, or to punishment so severe, as those affixed to them by the ex post facto law. The reason why these laws are so universally condemned is, that they overlook the great object of all criminal law, which is, to hold up the fear and certainty of punishment as a counteracting motive, to the minds of persons tempted to crime to prevent them from committing it. But a punishment prescribed after an act is done, cannot, of course, present any such motive. It is contrary to the fundamental principle of criminal justice, which is, that the person who violates a law deserves punishment, because he wilfully breaks a law, which in theory, he knows or may know to exist. But he cannot know of the existence of a law which does not, in fact, exist at the time, but is enacted afterwards. The cases upon this subject have no bearing upon the one before us.
The other class relates to acts passed to take away existing rights. If they profess to take away or subvert rights actually existing at the time of their enactment, they are unconstitutional. There is a large class of cases, where acts of legislation are passed, to correct errors, and declare valid and give force and effect to the acts and proceedings of corporations and other bodies, and also to officers, in eases of irregularity in such proceedings. The legislature, we believe, has gone so far as to declare marriages solemnized by officers at the time *282 not qualified by law, though supposed by the officers themselves to be so, duly authorized. These laws are most beneficent in their purpose and design, as statutes of peace, to confirm rights, to give effect to titles, and to remove doubts. The force and effect of such statutes may depend on many circumstances; and cases arising on them must be determined according to their particular merits, as they arise. This class of cases has no bearing on the present.
In the present case the court are of opinion that this act is not ex post facto, or retrospective in its legislative action. It relates to future proceedings in writs of error, in criminal cases, and it is not retroactive in an obnoxious sense, because it relates to writs of error on past judgments. It relates solely to remedies, and a writ of error is purely remedial. In legal effect, it directs that writs of error, in criminal cases, shall only be brought on certain conditions, one of which is, that, if the error is only in the award of punishment, it shall be set right. In this the law is analogous to one in civil cases, which provides, that a judgment shall not be reversed for any formal error, which might have been avoided by amendment. In this we think there is no hardship, and no departure from just principles of legislation. Such a statute has long been demanded, to prevent a palpable failure of justice. Judgments in criminal courts are often passed under a pressure of business, and when there is little time for deliberation; and it would tend to bring the law into disrepute, and impair its efficacy, if criminals acknowledged to be rightly convicted, could escape punishment altogether, by taking advantage of a mere mistake in the sentence.
It is argued that this statute disturbs the symmetry of the common law. That is nothing more than a figurative expression, If it mean that it does more than every other statute does. All statutes are intended to modify the common law to affect remedies and future proceedings of various sorts. The question is, simply, whether it disturbs the fundamental principles of right, and we think it does not. The judgment will be, that the former judgment be reversed, and that, in lieu of the three sentences imposed in the court of common pleas, *283 the plaintiff be sentenced to imprisonment for eight years in the state prison, three days of the term to be spent in solitary confinement, and the term to be computed from the time when the first sentence commenced its operation.
J. A. Bolles, for the plaintiff in error.
Clifford, (attorney-general) for the commonwealth.