# CHARLESTON.

## Ex Parte Bornee.

### Submitted May 11, 1915.   Decided May 28, 1915.

1. Constitutional Law—*Construction of Constitutional Provision—Common Law—Judicial Decision.*

    A constitutional provision derived from the common law and contained in other constitutions, which has received a settled construction by judicial decisions prior to its adoption, must be interpreted in the light of the common law and the general judicial acceptance of its meaning. (p. 362).

2. Criminal Law—*Second "Jeopardy"—Immunity from Prosecution.*

    At the common law and under the interpretations in American jurisprudence, protection from second jeopardy for the same offense includes immunity from further prosecution where on a valid indictment in a court of competent jurisdiction the accused is acquitted by a jury regularly empaneled and sworn to try the issue of his guilt. (p. 364).

3. Same—*Second Jeopardy—Appeal by State.*

    Prior to the adoption of our constitution it was the general judicial acceptance that an appeal by the state in a criminal case involving life or liberty, after one jeopardy had attached by the empaneling and swearing of a jury, was violative of the principle that one should not twice be put in jeopardy for the same offense,

and with this meaning the inhibition became a part of the constitutional law of the state.  (p. 365).

4. Same—*Jeopardy—Legislative Power.*

The constitutional amendment of 1879-80, having for its purpose the revision of the judicial department, did not, wherein it provided that this court should have "such other appellate jurisdiction in both civil and criminal cases as may be prescribed by law", give legislative power to alter the originally understood meaning of jeopardy in the bill of rights.  (p. 366).

5. Same—*Appeal by State—Second Jeapordy—Validity of Statute.*

Acts 1913, ch. 13, sec. 22, giving right of appeal to the state, is unconstitutional and ineffective in any imprisonment case wherein it operates to put the accused again in jeopardy for the same offense.  (p. 368).

6. Habeas Corpus—*Right to Relief—Imprisonment Under Void Judgment.*

One imprisoned by the judgment of a court which is without jurisdiction in the premises because proceeding under an unconstitutional law, may be discharged by the writ of *habeas corpus.* (p. 369).

(Judge Lynch was present, but took no part in the decision, for the reason, that he was unable, on account of illness, to participate in the determination of the case.)

Habeas corpus by Steve Bornee.

                                        *Prisoner discharged.*

*Van A. Barrickman,* for petitioner.

*Fred O. Blue,* and *John T. Simms,* for respondents.

Robinson, President:

We have before us under the original jurisdiction of this court, proceedings in *habeas corpus* by which Steve Bornee seeks discharge from the custody of the jailer of Monongalia County.  The controlling facts are as follows: Bornee was indicted by a grand jury in the circuit court of the county named, for alleged violation of a certain provision of the laws of this State prohibiting the selling and handling of liquors.  Acts 1915, ch. 7, sec. 31.  He pleaded not guilty and was put on trial before a jury regularly empaneled and sworn.  The trial proceeded to a verdict, which was that the accused was not guilty.  But the court, on motion of the

State, set aside the verdict of acquittal as contrary to law and the evidence, and awarded the State a new trial, over the objection of the accused. His plea of the former acquittal was rejected, and a discharge from further prosecution on the indictment denied him. He was put on trial before another jury. This jury failed to agree, and the case was continued. Thereupon the accused was committed to the jail of the county, where he has since been, and now is, imprisoned to answer the indictment.

Our constitution forbids that one be twice put in jeopardy of life or liberty for the same offense. That Bornee is held for another trial under the very indictment on which he was once acquitted by the verdict of a jury, is conceded. That it is proposed to try him again for the same offense is plainly apparent. But the statute under which he stands indicted prescribes that the State shall have the right of appeal in all cases arising thereunder. Acts 1913, ch. 13, sec. 22. Such right of appeal, if it exists, of course embraces the power of the trial court to set aside a verdict of acquittal. Is the statutory right of appeal by the State constitutional and effective in Bornee's case? In other words, will the recognition of it put the accused in second jeopardy? The answer to this question must depend largely on the determination of what the makers of our constitution meant by the use of the word "jeopardy". If they meant jeopardy as generally understood by the common law and the decisions of the courts prior to and at the time of the adoption of the constitution, the course pursued as to Bornee puts him more than once in jeopardy. If they meant by jeopardy one continuous prosecution through to final judgment, even though on appeal by the State, it would be otherwise. That they meant the former, we can have no doubt. We may venture to say that the latter idea was unknown in their day.

(1) The provision that no one shall be twice put in jeopardy for the same offense is derived from a principle of the common law. Prior to the formation of our State, Virginia had ever maintained this common-law principle, notwithstanding her constitution did not embrace it and it was not beyond the power of legislative change. It seems needless to say that in English law everywhere the principle was

known and its meaning understood. The Constitution of the United States embraced it, as did most of the state constitutions. Whether made constitutional or not, the principle that one shall not be twice put in jeopardy for the same offense had been regarded as a safeguard of individual liberty. Differences there had been as to minor questions arising from its application, but indeed none as to its general meaning and effect. So it stood when West Virginia was formed. The makers of our first constitution embraced it in the bill of rights, thus deeming that it should be put beyond the power of legislative change. Art. 2, sec. 2. The provision without change was retained in our present constitution. Art. 3, sec. 5. From the beginning of this commonwealth, it has been as it stands to-day, constitutional. Prior to its adoption into our constitutional law, it had received a settled construction by the judicial decisions of our own and other courts. That construction was not by any means that jeopardy meant one continuous prosecution, even through appeal by the State, to final judgment.

Nothing appearing in a statute or constitution to change the generally accepted meaning of the terms used, they must be construed according to the general acceptation of their meaning at the time they were used. And says Judge Cooley, "it must not be forgotten, in construing our constitutions, that in many particulars they are but the legitimate successors of the great charters of English liberty, whose provisions declaratory of the rights of the subject have acquired a well-understood meaning, which the people must be supposed to have had in view in adopting them." Constitutional Limitations (6th ed.) 74. Speaking of the provision against a second jeopardy as found in an act of Congress relating to the Philippine Islands, the Supreme Court of the United States said: "In ascertaining the meaning of the phrase taken from the Bill of Rights it must be construed with reference to the common law from which it was taken." *Kepner* v. *United States*, 195, U. S. 100. In *People* v. *Webb*, 38 Cal. 467, wherein the construction of the second jeopardy provision was involved much as it is here, the court held: "The settled construction of a constitutional provision made before

its adoption into the Constitution of this State should be held as the just interpretation thereof.''

The framers of our constitution naturally had in mind the Virginia law of the subject. But that was not different from the American understanding that a prisoner was once in jeopardy whenever, upon a valid indictment, a jury in a court of competent jurisdiction was regularly empaneled and sworn to try the issue of his guilt. While we derived the principle from the common law of our English ancestors, yet in American jurisprudence to the time of the adoption of our constitution there had grown up a universally recognized, distinctly American doctrine on the subject. The principle had received sanction as a fundamental one to a degree unknown in the English law. And so with us it still stands to-day. Jurists and publicists there now are who attack the logic of its universally accepted meaning. *State* v. *Lee,* 65 Conn. 265; dissenting opinion of Mr. Justice Holmes, in *Kepner* v. *United States,* 195 U. S. 134; 5 Journal of Criminal Law and Criminology, 16; 8 Harvard Law Review, 354; 20 Id. 319. Nevertheless, proposed innovations touching the ancient principle as ordinarily understood, are still most jealously regarded. See debates on the bill for appeals by the government in criminal prosecutions, Congressional Record, 59th Congress.

(2) It must be conceded by all, without citation to the innumerable authorities, that at the common law and under the interpretations in American jurisprudence, protection from second jeopardy for the same offense included immunity from further prosecution where a jury in a court having jurisdiction had acquitted the accused of the offense. It has been universally understood that if, in an imprisonment case, an accused is once put on trial upon a valid indictment in a court of competent jurisdiction, before a jury regularly empaneled and sworn, and is acquitted, he is forever discharged of the accusation. Never again can he be prosecuted for the same offense. To do so would again put him in jeopardy. This long recognized meaning of jeopardy is the one embraced in our constitutional provision.

There are other phases of the general subject, some as to which there is diversity of opinion, but we must confine our-

selves so far as may be to the concrete case before us.   Here
we have an accused tried on a concededly valid indictment
before a court of undoubted jurisdiction and acquitted by a
jury duly empaneled and sworn.   The offense charged is one
punishable by imprisonment.   Yet it is proposed again to try
the issue of his guilt.   Plainly this is violative of the sense in
which the constitution uses the word "jeopardy".

(3)   Virginia early by statute gave the accused when con-
victed a right of appeal.   But, though no constitutional
barrier interferred, she never innovated on the common law
by giving the State the right of appeal in a criminal case,
except in cases relating to the public revenue.   It must,
however, be remembered that the latter cases involved only
fines, not imprisonment.   In cases of life and liberty, Virginia
steadfastly maintained the principle that one duly acquitted
of an offense should not be haled to answer it again in any
way.   To the time of the making of our constitution in 1872,
the new State followed the same understanding of jeopardy
and has ever since maintained it.   2 Enc. Dig. Va. & W. Va.
183, *et seq.*   In the framing of the constitution of West Vir-
ginia in 1863 and 1872, the right of one to appeal when con-
victed, was expressly guaranteed.   But no right of appeal was
given to the State.   An appeal by the convicted person, under
the idea of waiver by him, was not considered inconsistent
with the prohibition against a second jeopardy.   But not so
as to an appeal by the State.   The framers considered that
violative of the second jeopardy inhibition.   For in imprison-
ment cases, Virginia had always regarded an appeal by the
State as being violative of the principle against second
jeopardy.   Moreover, in American law it was the general
interpretation that an appeal by the State in a life or liberty
case, after one jeopardy of the accused had attached by the
empaneling and swearing of a jury, was violative of the prin-
ciple against second jeopardy. So, when the framers made
use of that principle, they could have meant only that which
was its common acceptation in the law of the day.   An en-
lightening view of the American cases, showing that the
common acceptation has always been that an appeal by the
State after jeopardy has attached is violative of the second
jeopardy clause, is found in the opinion of Mr. Justice Gray,

in *United States* v. *Sanges,* 144 U. S. 310. It is well to read the same herewith. And here we may remark that it is significant to note that the act of Congress passed March 2, 1907, allowing appeals in criminal cases to the government in certain instances, is guarded in the end by the following proviso: "That no writ of error shall be taken by or allowed the United States in any case where there has been a verdict in favor of the defendant." 34 Stat. L. 1246.

It seems pertinent to quote here from the opinion of Judge GREEN, in *Moundsville* v. *Fountain,* 27 W. Va. 182, as disclosing how this court has heretofore regarded the effect of the constitutional provision we have been considering: "Accordingly our law provides, that a writ of error lies in criminal cases to the judgment of the circuit court in behalf of the State, only where the offence is a violation of the revenue laws. (Warth's Code, ch. 160, § 3, p. 852-3.) In these cases the punishment is a fine only. (Warth's Code, ch. 32, § 3, p. 217). If the punishment had been fine and imprisonment, no writ of error could have been allowed the State. For, if after the accused has been acquitted, the State could obtain a writ of error, and by this judgment of the appellate court the decision of the court below should be reversed, and the case sent back for a new trial, it is obvious, that, if the punishment was imprisonment, the accused would be twice put in jeopardy of his liberty in violation of our bill of rights."

(4) It is urged that the makers of our constitution did not, by the use of the words enunciating the settled principle against second jeopardy, mean to foreclose the right of the law-making body to give right of appeal to the State; for, it is said that in another connection in the same constitution they provided that the Supreme Court of Appeals, in addition to jurisdiction of an appeal by one convicted, should have jurisdiction of appeals by the State in revenue cases, "and such other appellate jurisdiction, in both civil and criminal cases, as may be prescribed by law." Art. 8, sec. 3. True, in the original constitution, that of 1863, these quoted words appeared in relation to the jurisdiction of this court. There they directly followed the grant of appellate jurisdiction in criminal cases where one has been convicted of a felony or misdemeanor. That constitution gave no jurisdic-

tion for appeals by the State in revenue cases, though the Virginia statute prescribing such appeals was carried into the statute law of the new State. But the words which we have quoted would not in proper construction have the effect to cut down the express provision in the bill of rights against second jeopardy. These are only general words relating to the jurisdiction of this court. The particular provision against second jeopardy in the very charter of individual liberties which precedes these general words, can not be said to be impliedly altered in its established conception by words in another connection which do not expressly show such an intention.

Moreover, when it came to the framing of the constitution of 1872, these words, "and such other appellate jurisdiction in both civil and criminal cases as may be prescribed by law", were omitted. In the matter of the jurisdiction of this court the section embracing it stopped with the grant of the right of appeal to one convicted for a felony or misdemeanor. In the bill of rights, by the usual terms, and we must think by the usual meaning, the probibition against second jeopardy was re-established. Nowhere in the constitution of 1872 did the framers use these words that are now pointed to for indication that the Legislature might later say that jeopardy was not what it had theretofore been considered. That constitution as originally framed and adopted, contained no words that could even remotely imply that the Legislature might give anyone a right of appeal in a criminal case other than a convicted person. Pointedly it re-established the long settled provision against second jeopardy. It put interference with that provision unquestionably beyond the power of the Legislature.

It must be distinctly noted that the provision giving this court jurisdiction of an appeal by the State in revenue cases, "and such other appellate jurisdiction in both civil and criminal cases as may be prescribed by law", came into our present constitution only by the amendment of 1879-80. The purpose of that amendment was to revise the judicial department of the state government. A section of the established bill of rights could not be impliedly repealed by such amendment. The former was a particular provision relating to a

distinct and fundamental subject. We judicially know as a matter of State history that the amendment was contemplated and made by the people not to change the bill of rights, but solely to change the judicial department. Dissatisfaction with the latter, by no means with the former, prompted the amendment. It could not have entered the minds of the people that they were amending in any way the established bill of rights. The amendment can have force only so far as the previous particular provision against second jeopardy will permit. There is no glaring or irreconcilable repugnancy between them. The former particular provision left standing does not make the later general provision unavailing. The amendment enables the Legislature to give an appeal to the State in a criminal case if the appeal is of preliminary character— not of the character to put the accused in second jeopardy. An example of such legislative action will be found in the acts of the recent Legislature. Acts 1915, ch. 69, sec. 31. It is only where there are explicit words or a total repugnancy indicating intention of repeal that a statute general in its terms will repeal the particular provisions of a former statute which are special in their application to a particular case or class of cases. *Clemans* v. *Board of Education,* 68 W. Va. 298. The same can not be different as to fundamental statutes—constitutions. The amendment of the constitution whereby this court was given ''such other appellate jurisdiction in both civil and criminal cases as may be prescribed by law'', did not give legislative power to alter the meaning of jeopardy in the bill of rights.

(5) This court is not unmindful of its duty to sustain a legislative enactment where it can be done at all consistently with the constitution. But, observing this rule cautiously as we have, we are brought to the conclusion that the statute giving right of appeal to the State in all cases arising under the chapter relating to violations in the selling and handling of intoxicating liquors, can not stand when it denies to one the protection afforded him by the constitutional mandate that he shall not be twice put in jeopardy for the same offense. Our people plainly put it beyond the power of the Legislature to subject to a second jeopardy one charged with an offense for which he may be imprisoned. That policy is

so a part of our fundamental law that only the people by constitutional amendment can change it. It has been said: "Perhaps we have outgrown the necessity of such protection as it gives against the prosecuting officers; but except where there have been statutory changes *in states whose constitutions admit of them,* the prosecution cannot appeal, and an appeal by the prisoner is dependent upon a waiver." 18 Harvard Law Review, 216. And says Mr. Bishop: "Statutes providing for rehearings in criminal cases will not ordinarily be interpreted, and will never have force, to violate the constitutional provision under consideration. If the jeopardy has once attached, there can be no second jeopardy without the consent of the defendant, whatever the statute may direct. It will apply only where it constitutionally may. Thus, a statute which, by the device of an appeal by the State, under takes to authorize the retrial of one acquitted on a valid indictment is void. Even where the acquittal was produced by an erroneous direction of the judge at the trial, it will stand against all doings for its reversal without the defendant's consent, whatever their forms, and from whatever source proceeding. But reversals before jeopardy are different. Whether the applicant is the defendant or the State, they do not prejudice a fresh prosecution." 1 Bishop's New Criminal Law, secs. 1026-27.

(6) It has been suggested that *habeas corpus* does not lie—that the remedy of the prisoner is by appeal for error. That the prisoner may be discharged by the writ of *habeas corpus* we have no doubt. The court was absolutely without jurisdiction to hold him again for the same offense. It can not rely on the unconstitutional legislation whereby it is said the State may appeal in such cases. No court as well as no legislature has jurisdiction or province to violate the constitutional inhibition that one shall not be twice put in jeopardy for the same offense. All orders and judgments of the court after the verdict of acquittal are totally void. They can not afford warrant for the holding of Bornee in jail. As against them he may stand on the paramount guaranty of the constitution in his favor. The court's jurisdiction over him for the offense charged ceased by the return of a verdict of acquittal. Any further step against him on the indictment is void and

without legal effect. That one may be discharged from imprisonment under any void judgment is the established law of the land. *Ex parte Mooney,* 26 W. Va. 36; *Ex parte Mylius,* 61 W. Va. 405. That one held for second jeopardy may be discharged by the writ of *habeas corpus* is the decision of the Supreme Court of the United States in *Ex parte Neilson,* 131 U. S. 176, wherein Mr. Justice Bradley says: "It is firmly established that if the court which renders a judgment has not jurisdiction to render it, either because the proceedings or the law under which they are taken are unconstitutional, or for any other reason, the judgment is void and may be questioned collaterally, and a defendant who is imprisoned under and by virtue of it may be discharged from custody on *habeas corpus.*" Other authorities in point are *Ex parte Lange,* 18 Wall. 163; *Ex parte Siebold,* 100 U. S. 371; *In re Snow,* 120 U. S. 274; Bailey on Habeas Corpus, 91, 120, *et seq.*

An order will be entered discharging the prisoner.

*Prisoner discharged.*