STATE, Plaintiff in error, vs. WITTE, Defendant in error.

*May 21—June 16, 1943.*

For the plaintiff in error there were briefs by the *Attorney General, William A. Platz,* assistant attorney general, and *Clarence G. Traeger,* district attorney of Dodge county, and oral argument by *Mr. Platz* and *Mr. Traeger.*

*William H. Markham* of Horicon, for the defendant in error.

BARLOW, J. The jury found the defendant in error guilty of embezzlement on three counts, and upon motion after verdict the trial judge set the verdict aside for the reason that the evidence was insufficient, and discharged the defendant in error. The state brings the case to this court on a writ of error under sec. 358.12 (8), Stats., with permission of the presiding judge. Defendant in error contends that this subsection is unconstitutional, as violating sec. 8, art. I, of the Wisconsin constitution, which provides, so far as material here, as follows:

"no person for the same offense shall be put twice in jeopardy of punishment."

That portion of sec. 358.12 (8), Stats., applicable here provides as follows:

"A writ of error may be taken by and on behalf of the state in criminal cases: . . .

"(8) From rulings and decisions adverse to the state upon all questions of law arising on the trial, with the permission of the presiding judge, in the same manner and to the same effect as if taken by the defendant."

Prior to 1909 the state had no right of review in a criminal action. The first legislative act permitting review of adverse decisions in criminal cases by the state was ch. 224, Laws of 1909, which created sec. 4724a, Stats., permitting a writ of error by the state to review any final judgment adverse to the

state rendered before jeopardy had attached. In 1911 sec. 4724a was amended by ch. 187, Laws of 1911, creating what is now sec. 358.12, subs. (1) to (6). This chapter also created sec. 4645a, now numbered sec. 355.09, requiring objections to the sufficiency of the information or indictment, or to the prosecution, which may be raised by a special plea or motion, to be so raised before the jury is sworn or else be deemed waived, and if raised later with the consent of the court, to constitute a waiver of jeopardy. Subs. (7) and (8) of sec. 358.12 were added by ch. 306, Laws of 1941.

In *State v. Meen,* 171 Wis. 36, 38, 176 N. W. 70, a case presenting exactly the same situation as we have here, decided prior to the enactment of sec. 358.12, Stats., this court said:

"Writs of error do not lie at the suit of the state unless they are provided for by statutes which are constitutional, under the provisions of sec. 8, art. I., Const. . . . *State v. Kemp,* 17 Wis. *669; *State v. Martin,* 30 Wis. 216; *State v. Grottkau,* 73 Wis. 589, 41 N. W. 80, 1063."

In *State v. Hunter,* 235 Wis. 188, 292 N. W. 609, the right of the state to a writ of error prior to the attachment of jeopardy was upheld when subs. (1), (2), and (3) of sec. 358.12, Stats., were held to be constitutional.

Under the general rule of law, that when a person has been placed on trial on a valid indictment or information before a court of competent jurisdiction, has been arraigned and has pleaded, and the jury has been impaneled or sworn, jeopardy has attached, *Schultz v. State,* 135 Wis. 644, 114 N. W. 505, 116 N. W. 259, 116 N. W. 571; *McDonald v. State,* 79 Wis. 651, 48 N. W. 863; *State v. Parish,* 43 Wis. 395, there is no question about defendant in error having been in jeopardy in this case.

It does not follow that the statute authorizing this writ of error violates the double-jeopardy provision of the constitution of the state of Wisconsin. We recognize that somewhat

similar statutes have been held to violate the constitutional provisions prohibiting double jeopardy. *People v. Webb,* 38 Cal. 467; *People v. Miner,* 144 Ill. 308, 33 N. E. 40, 19 L. R. A. 342; *Ex parte Bornee,* 76 W. Va. 360, 85 N. E. 529, and other cases.

In *State v. Felch,* 92 Vt. 477, 105 Atl. 23, on appeal by the state in a criminal action, the common-law rule and provisions of the United States constitution relative to double jeopardy were considered, and the court held that the law of the land must be interpreted in the light of the period in which it is determined; that it changes from time to time, and is a matter of legislation, provided always that express constitutional provisions and fundamental rights of the defendant are not infringed upon or impaired, citing *Brown v. New Jersey,* 175 U. S. 172, 20 Sup. Ct. 77, 44 L. Ed. 119.

Sub. (8) of sec. 358.12, Stats., was copied from the statutes of the state of Connecticut, and its constitutionality was passed upon by the supreme court of errors of that state in *State v. Lee,* 65 Conn. 265, 273, 30 Atl. 1110, 27 L. R. A. 498, where the court said:

"Judicious legislation for securing a full, fair and legal trial of each criminal cause, is not in derogation, but in protection, of individual right, and is in full accord with the principle that no man shall twice be put in jeopardy for the same offense.

"That maxim, as we have seen, is based on the truth that a judicial proceeding lawfully carried on to its conclusion by a final judgment puts the seal of finality on the controversies determined by that judgment, and is not based on a theory that a person accused of a crime has any natural right of exemption from those regulations of a judicial proceeding which the state deems necessary to make sure that the conduct and final result of that proceeding shall be in accordance with law. And so the 'putting in jeopardy' means a jeopardy which is real, and has continued through every stage of one prosecution, as fixed by existing laws relating to procedure; while such prosecution remains undetermined the one jeopardy has not been exhausted."

The validity of this same statute was sustained by the United States supreme court in *Palko v. Connecticut*, 302 U. S. 319, 58 Sup. Ct. 149, 82 L. Ed. 288.

Mr. Justice HOLMES, in a dissenting opinion concurred in by Mr. Justice WHITE and Mr. Justice McKENNA, in *Kepner v. United States*, 195 U. S. 100, 134, 24 Sup. Ct. 797, 49 L. Ed. 114, on this same question said:

"It is more pertinent to observe that it seems to me that logically and rationally a man cannot be said to be more than once in jeopardy in the same cause, however often he may be tried. The jeopardy is one continuing jeopardy from its beginning to the end of the cause. Everybody agrees that the principle in its origin was a rule forbidding a trial in a new and independent case where a man already had been tried once. But there is no rule that a man may not be tried twice in the same case."

Jeopardy is not exhausted, but continues when a jury is discharged without the consent of the accused where it appears that after reasonable time for deliberation has been allowed, a verdict has not been agreed upon and there is no probability of an agreement, *State v. Crane*, 4 Wis. *400; where the jury is discharged by reason of sickness of the trial judge, *Parchman v. State*, 2 Tex. App. 228, 28 Am. Rep. 435, by reason of sickness or death of a member of a juror's family, 53 A. L. R. 1062, or sickness of a juror, *Commonwealth v. Fitzpatrick*, 121 Pa. 109, 15 Atl. 466, 6 Am. St. Rep. 757, or where the trial is before a court without jurisdiction. Thus it is established that a defendant may be required to submit to a second trial without consenting thereto in the interest of justice. All of this points to the end that there shall be but one legal trial, but it is not straining the commonly called double-jeopardy provision of the constitution to say that it is a single and continuing jeopardy until such time as a defendant has had a legal trial for the offense with which he is charged. To say that a defendant has been twice placed in

jeopardy because he is required to stand a second trial when the first trial was not according to the law of the jurisdiction in which he was tried is contrary to sound reasoning.

This court realizes fully the importance of the protection of the liberty of its citizens, and the injustice of requiring a person to stand trial more than once for the same offense. The state should not be permitted to continually prosecute a citizen in the hope that it may find a jury which will eventually convict him, but it should have the privilege of one legal trial of the defendant for the offense with which he is charged. This can only be accomplished by the correction of material errors in each case, whether it be prejudicial to the state or to the defendant. The single jeopardy of the defendant is not terminated until both the facts and the law applicable thereto are finally determined. Finality is essential, but not when it is acquired contrary to law. Justice occupies the paramount position in American jurisprudence, and changes in procedure are fundamentally based on this fact. The statute in this case does not deprive defendant in error of a fair and impartial legal trial—in fact, it guarantees just this. There is a continuing jeopardy until the case is finally determined.

We hold that sec. 358.12 (8), Stats., does not violate sec. 8, art. I, of the constitution of the state of Wisconsin.

It is claimed by defendant in error that the discharge of the defendant by the trial court is final, and this court is without jurisdiction to review. It is unnecessary to decide this question by reason of the conclusion reached upon review of the evidence. It is well, however, to outline a procedure to be followed in criminal cases where the state sues out a writ of error after the court has set aside the verdict of guilty.

In the interest of the state and the accused the law properly provides that permission of the presiding judge shall be obtained before the state may sue out a writ of error. Application for this permission should be made at the time the judg-

ment of acquittal is rendered. The accused has a right to move for his dismissal. The presiding judge will determine whether he will grant permission to have the case reviewed, and if this permission is granted, the accused may be permitted to furnish bail, or be retained in custody until the appeal is determined. In this manner the jurisdiction of the court over the defendant is retained. It is unfair to the defendant to permit him to leave the courtroom assuming that his case is finally disposed of and then be informed sometime later that his case is to be reviewed and that he is subject to the jurisdiction of the court even though he had previously been discharged. There is a serious question whether such a procedure would be constitutional. If the district attorney or prosecutor at a later date should decide that he does not wish to proceed under the writ of error, the defendant can be called into court and discharged, and if upon review further proceedings are necessary, the trial court is in a position to carry out the mandate of the reviewing court.

Defendant in error claims that sec. 358.12 (8), Stats., is void as to this case for the reason that, if given effect, it would be *ex post facto* in its nature and operation, taking from accused a substantial right given to him by the law in force at the time of the commission of the alleged offenses. The constitutional provisions involved follow:

Sec. 12, art. I, Wis. Const.: "No . . . *ex post facto* law . . . shall ever be passed. . . . "

Sec. 9, art. I, cl. 3, U. S. Const.: "No . . . *ex post facto* law shall be passed."

Sec. 10, art. I, U. S. Const.: "No state shall . . . pass any . . . *ex post facto* law. . . . "

This subsection was part of ch. 306, Laws of 1941, and became the law of this state on the 28th day of June, 1941. Defendant in error is charged with having committed the crimes in question during the year 1939.

We hold that the portion of the statute in question does not violate the prohibition against *ex post facto* laws contained in the constitution of the United States and the constitution of the state of Wisconsin. Defendant in error was prosecuted for committing the crime of embezzlement; that law has not been changed.

In *Mallett v. North Carolina*, 181 U. S. 589, 597, 21 Sup. Ct. 730, 45 L. Ed. 1015, defendants were convicted of conspiracy, and thereafter the legislature enacted a statute giving the state the right to appeal from decisions of the superior court granting new trials in criminal cases. The state appealed to the supreme court, pursuant to the new statute, which reviewed the judgment of the superior court and remanded the case to the trial court for the execution of the original sentence. In its opinion the court said:

"Applying the principles established by these cases to the facts of the present case, we think it may be concluded that the legislation of North Carolina in question did not make that a criminal act which was innocent when done; did not aggravate an offense or change the punishment and make it greater than when it was committed; did not alter the rules of evidence, and require less or different evidence than the law required at the time of the commission of the offense; and did not deprive the accused of any substantial right or immunity possessed by them at the time of the commission of the offense charged." See also *State v. Taggart*, 186 Iowa, 247, 172 N. W. 299, 301; *Jacquins v. Commonwealth*, 63 Mass. 279.

The evidence in this case is insufficient to sustain the verdict of the jury, and the trial court properly set it aside. The state relies on secs. 343.21 and 59.73 (3), Stats., in contending that the verdict should be reinstated and sentence pronounced thereon.

Sec. 343.21, Stats., provides in part as follows:

"The refusal or wilful neglect of any officer or other person named in section 343.20 [embezzlement statute] to pay over

any moneys . . . as required by law . . . shall . . . be *prima facie* evidence of the embezzlement thereof; and every public officer shall promptly pay over, as required by law, the same moneys received and held by him by virtue of his office and the whole thereof. . . . "

Sec. 59.73 (3), Stats., provides:

"Every county officer and employee and every board, commission or other body that collects or receives moneys for or in behalf of the county, shall: . . .

"(3) Pay all such moneys into the county treasury at such time as is prescribed by law, or if not so prescribed daily or at such intervals as are prescribed by the county board."

The state then produced audit figures, charging the defendant with funds received at the time he entered office and receipts thereafter during the year 1939 alleged in the information, and showed that moneys were received during that period which were not promptly paid over to the county, and that the funds in the bank were not sufficient to pay to the county the amount claimed to be due, and to pay trust funds claimed to be due to others.

It is clear from the evidence that the bookkeeping system in this office was anything but modern, and had grown up over a period of years. Defendant in error was not a trained bookkeeper and was not qualified to revise the bookkeeping system. Two persons in the office received funds that were payable to this office. They were the defendant in error and the deputy clerk of courts. Receipts were issued only when they were requested. They had a cash drawer, and funds placed in the cash drawer were transferred to a safe, and later deposits were made in the Horicon State Bank. They had a cashbook, a trust-fund book, and an alimony ledger. Alimony funds were not recorded in the cashbook. Funds deposited in the bank were delivered to the bank by this defendant in error and deposited in the name of the county. All checks issued

on this account were signed by the defendant in error. No trial balances were taken either daily or at any other time, and it was the custom of this office to make a settlement with the county treasurer once a year, although intervening payments were occasionally made to the county treasurer at other times.

Defendant in error denied that he appropriated any funds received by this office to his own use. In order to establish embezzlement it is necessary to prove fraudulent conversion beyond a reasonable doubt. In *State v. Kuenzli,* 208 Wis. 340, 346, 242 N. W. 147, this court said:

"It is true that whether these acts on the part of the defendant constituted mere conversion or embezzlement depends upon the intent with which they were done. However, intent is a state of mind which can be evidenced only by the words or conduct of the person who is claimed to have entertained it."

In order to sustain a conviction there must be evidence as to intent or evidence from which it can be inferred. The testimony of defendant in error that he did not convert any money to his own use is not conclusive, but this together with other evidence may be sufficient to establish a reasonable doubt as a matter of law. The state stipulated that the defendant's wealth did not increase by reason of the alleged shortage. It was not shown on the part of the state that the defendant expended any of this money for his personal use. No checks were drawn on the funds deposited in the name of the county to the defendant in error, or to any person for the use of defendant in error. All checks were properly issued for payments legally payable from those funds. Defendant in error made no false entries on the books of this office. Defendant in error at different times requested the county to make an audit of his office prior to the time that the audit was made. He requested that the combination to the safe be changed, as it was necessarily known to several people. Upon the failure of the

county to have it changed, he caused it to be changed himself. He appointed a new deputy clerk of courts shortly after the beginning of his second term of office. If several persons had been employed in this office, all authorized to receive funds, it would be necessary for the state to prove that the accused actually received the funds that he is charged with embezzling. This is no reflection on any employee; it is a duty placed upon the state in order to sustain a conviction.

In *State v. Kuenzli, supra,* the court said (p. 346) :

"There are several acts on the part of the defendant which, if characterized by a fraudulent intent, could constitute embezzlement. *State v. Heiden,* 139 Wis. 519, 526, 121 N. W. 138. The deposit of the client's money in his own account, the drawing out of all the funds in defendant's account, or the neglect of the defendant to pay the money to his client upon demand, were all capable of supporting a charge of embezzlement, providing they were characterized by the requisite intent."

There is no evidence showing any criminal motive or intent, and no evidence of attempted concealment in this case. The learned trial judge properly said in his decision setting aside the verdict :

"A man may do things irregularly ; he may do poor bookkeeping ; he may be very careless ; he may sign a receipt, as he here did, for moneys which, concededly, he never received ; he may even be guilty of malfeasance in office, of failure to properly keep the accounts and to make daily entries, and so on, as sec. 59.73 provides—but you cannot convict him of embezzlement for that."

*By the Court.*—Order affirmed.