CITY OF NEWARK, PLAINTIFF-RESPONDENT, v. ELIZABETH L. PULVERMAN, EXECUTRIX UNDER THE LAST WILL AND TESTAMENT OF JOHN V. MARTIN, DECEASED, DEFENDANT-APPELLANT.

Argued February 16, 1953—Decided March 30, 1953.

106

*Mr. Ralph G. Mesce* argued the cause for appellant (*Messrs. Carl & Wm. Abruzzese*, attorneys).

*Mr. Charles Handler*, Corporation Counsel of the City of Newark, argued the cause for respondent (*Mr. Joseph A. Ward*, on the brief).

The opinion of the court was delivered by

JACOBS, J. This is an appeal under *Art. VI, § V, par.* 1(*a*) of the *Constitution of* 1947 from the Appellate Division's reversal of the judgment of acquittal entered in the County Court. See *City of Newark v. Martin*, 22 *N. J. Super.* 32 (1952).

The defendant John W. Martin operated a parking lot at 341 Washington Street, Newark. On September 28,

1951 a complaint was filed against Martin in the municipal court charging that his operation of the parking lot was in violation of Newark's zoning ordinance and on October 15, 1951 he was convicted and fined $200. He appealed to the County Court under *Rule* 2:11 and after a trial *de novo* was found not guilty on the ground that the operation of a parking lot had not been interdicted by the terms of the ordinance. Thereupon Newark filed notice of appeal to the Appellate Division and in due course its appeal was argued. On October 7, 1952 the Appellate Division filed its opinion in which it found that Newark's ordinance did prohibit parking lots in the zone which included Martin's premises and reversed the judgment of the County Court. On October 17, 1952 Martin filed a petition for rehearing on the ground that the judgment of the County Court constituted an acquittal on a criminal charge and was not appealable. See *State v. Hart*, 90 *N. J. L.* 261 (*E. & A.* 1917). The petition for rehearing was denied on November 14, 1952. On the following day Martin died and his death was suggested on the record. On December 5, 1952 notice of appeal to this court was filed by Elizabeth L. Pulverman as executrix under the last will and testament of John W. Martin (see *Rule* 1:2–3*A*) and in support thereof the appellant urges that, under *Art.* I, *par.* 11, *Const.* of 1947 and *Rule* 2:11(*h*)(5), the Appellate Division could not properly entertain an appeal from the judgment of acquittal entered after trial *de novo* in the County Court. The respondent while urging the contrary, suggests that since this issue was not raised in the Appellate Division prior to the petition for rehearing, it may not be entertained here. The issue is an important one of public concern and ought be considered; there is no question as to our power to do so. See *Rule* 1:2–19(*a*); *Rule* 1:2–20(*c*); *In re Stern*, 11 *N. J.* 584 (1953); *State v. Jones*, 4 *N. J.* 374, 377 (1950).

In the well known case of *Kepner v. United States*, 195 *U. S.* 100, 24 *S. Ct.* 797, 49 *L. Ed.* 114 (1904), the court divided on the issue of whether the common law prohibition against double jeopardy, embodied in the Fifth Amendment

and in many state constitutions, operated to prevent an appeal by the prosecution after judgment of acquittal on a criminal charge. The majority, through Justice Day, took the position that it did, whereas the minority, through Justice Holmes, took the contrary position, asserting that the prohibition was confined to jeopardy in a new and independent case. See Cardozo, J. in *Palko v. State of Connecticut*, 302 *U. S.* 319, 322, 58 *S. Ct.* 149, 82 *L. Ed.* 288, 290 (1937). The majority's view has the support of numerous state court decisions (*Ex parte Bornee*, 76 *W. Va.* 360, 85 *S. E.* 529, *L. R. A.* 1915 *F,* 1093 (1915); 113 *A. L. R.* 636, 637 (1938); 157 *A. L. R.* 1065, 1066 (1945)), although it has been attacked in law review articles. See Miller, *Appeals by the State in Criminal Cases*, 36 *Yale L. J.* 486 (1927); Comley, *Former Jeopardy*, 35 *Yale L. J.* 674 (1926). In his article Justin Miller urges, with some force, that granting the right of appeal to the prosecution will significantly advance the sound administration of criminal justice without impairing the ever present requirement that there be a fair trial and a final judgment in conformity with law in the single case which may be maintained on the charge against the accused. See *A. L. I., Administration of the Criminal Law*, § 13 (*Proposed Final Draft*, 1935); 12 *Proceedings, A. L. I.*, 200 (1934–1935).

In *Palko v. Connecticut, supra,* the Supreme Court held that a statute which permits appeal by the state in criminal proceedings does not violate the Fourteenth Amendment. No state constitutional provision against double jeopardy was there involved, but in *State v. Brunn*, 22 *Wash.* 2d 120, 154 *P.* 2d 826, 157 *A. L. R.* 1049 (*Sup. Ct.* 1945), and *State v. Witte*, 243 *Wis.* 423, 10 *N. W.* 2d 117, 119 (*Sup. Ct.* 1943), statutes were sustained notwithstanding such provision. In the *Brunn* case the statute permitted appeals in all criminal cases except where there was an acquittal by a jury, and in the *Witte* case it permitted appeals in criminal cases "From rulings and decisions adverse to the state upon all questions of law arising on the trial, with the permission of the presiding judge, in the same manner and to the same effect as

if taken by the defendant." *Cf. State v. Evjue,* 254 *Wis.* 581, 37 *N. W. 2d* 50 *(Sup. Ct.* 1949) ; *State v. Portee,* 25 *Wash. 2d* 246, 170 *P. 2d* 326 *(Sup. Ct.* 1946). In both the *Brunn* and *Witte* cases the courts expressly approved the position of Justice Holmes in the *Kepner* case that the principle against double jeopardy forbids trial in a new and independent case but does not forbid more than one trial in the same case. See *State v. Lee,* 65 *Conn.* 265, 30 *A.* 1110 *(Sup. Ct. Err.* 1894) ; *Robb v. State,* 190 *Md.* 641, 60 *A. 2d* 211 *(Ct. App.* 1948).

Unlike the language in the Fifth Amendment which provides that no person shall be put twice in jeopardy for the same offense, our State Constitution provides that "No person shall, after acquittal, be tried for the same offense." See *Art. I, par.* 10, *Const. of* 1844; *Art. I, par.* 11, *Const. of* 1947. The available reports of the proceedings of the 1844 Convention indicate that the change in phraseology was primarily designed to avoid the possibility that a defendant be held immune from further prosecution under the double jeopardy prohibition *(State v. Cooper,* 13 *N. J. L.* 361, 370 *(Sup. Ct.* 1833)) where his first trial ended in a jury disagreement or disposition other than verdict of acquittal. *Proceedings, New Jersey Constitutional Convention of* 1844 (1942), 153, 412. *Cf. State v. Brunn, supra,* with *State v. Hall,* 9 *N. J. L.* 256, 258 *(Sup. Ct.* 1827). See 2 *Constitutional Convention of* 1947 (1951), 1352.

In *Smith and Bennett v. State,* 41 *N. J. L.* 598 *(E. & A.* 1879), the court dealt with the defendant's contention that his conviction of the crime of murder having been reversed on appeal he could not, under the common law principle against double jeopardy, be brought to trial again for the same offense. The court unanimously rejected this contention in an opinion by Chief Justice Beasley which discussed fully the scope of the double jeopardy principle. Early in his opinion he noted *(p.* 600) that there is

"nothing inconsistent with the precepts of natural justice in the re-trial of a person charged with crime, provided there is reasonable ground to believe that, on the first essay, a just result has not been

reached. In such a position of affairs it would be manifestly just that the matter should be re-investigated, as well on the application of society as on that of the party criminated."

Later in his opinion he referred with high approval to the dissenting opinion of Justice Crampton (*p.* 610) in a case where the court ordered the defendant discharged because his earlier trial had resulted in a disagreement. He noted that Justice Crampton's opinion

"maintains, by much force of argument and authority, that the principle which forbids the putting of the prisoner twice in jeopardy does not apply to any case except such as have resulted in a lawful acquittal or conviction. 'To make such a case,' says the learned judge, 'the prisoner must show that he was *"legitimo modo acquietatus vel convictus*," that is, by due course of law.' "

Finally, at the close of his opinion (*p.* 617) the Chief Justice left open the question of whether our constitutional provision prohibiting trial for the same offense after "acquittal" contemplated lawful acquittal or acquittal "in point of fact, irrespective of circumstance or mode in point of law."

In *State v. Meyer*, 65 *N. J. L.* 233 (*E. & A.* 1900), the court held that where the Supreme Court had reversed a criminal conviction the State could obtain further review in the Court of Errors and Appeals. See *Rule* 1:2–3. The opinion of Justice Dixon refers to English authorities supporting review by the Crown (*cf. Miller, supra*, at 490) after acquittal and concludes that in any event the statutes of New Jersey authorized review by the State where the conviction had been reversed in the court of intermediate appeal. He left undetermined the question of whether any review could be had by the State where the defendant was acquitted at the trial. In *State v. Hart*, 88 *N. J. L.* 48, 51 (*Sup. Ct.* 1915), affirmed 90 *N. J. L.* 261 (*E. & A.* 1917), this question was presented directly. Justice Swayze, in his opinion for the Supreme Court, cited the conflicting views in *Kepner v. United States, supra*, but declined to comment on the underlying constitutional issue. He found no statutory authority for review by the State after an acquittal at

trial and referred to our settled practice where it had "been taken for granted by bench and bar that the state was not entitled to a bill of exceptions or to a review by writ of error of an error in law by the trial judge." See *United States v. Sanges*, 144 *U. S.* 310, 12 *S. Ct.* 609, 36 *L. Ed.* 445 (1892). Justice Kalisch, in his opinion for the Court of Errors and Appeals, similarly found (*p.* 266) "that the right of review for trial errors on bills of exceptions in criminal cases is given by the statute of this state, solely to the defendant." See *State v. Dwyer*, 130 *N. J. L.* 179, 181 (*Sup. Ct.* 1943). However, although unnecessary to the decision, he rejected as the path to oppression, the suggestion that the provision in *Art.* I, *par.* 10 of the *Const. of* 1844 may be confined to "legal acquittal" and declared that no legislation could (*p.* 269) "be constitutionally enacted giving the right of review in cases where there has been an acquittal." *Cf. State v. Di Giosia*, 3 *N. J.* 413, 418 (1950).

 Although the State has had and still has the right of review upon the dismissal of an indictment (see *Rule* 2:5–3(*b*)(7)), it is clear that under our current statutes and rules of court no similar review of legal rulings may be had by the State in a criminal case where the defendant has been acquitted at trial. And in view of the pertinent issue presented for determination in the instant matter, we find no present occasion to express any view as to whether such review may constitutionally be provided in any form or to any extent. *Cf. State v. Brunn, supra; State v. Witte, supra.* Martin was not charged with violating any provision of the Crimes Act but was charged with violating a provision of Newark's zoning ordinance. There is a substantial division of authority throughout the country as to whether such charge is civil in nature and appealable by the city upon a finding for the defendant, or criminal in nature and, at least in the absence of express provision to the contrary, appealable only by the defendant in the event of conviction. See *Miller, Criminal Law*, 48 (1934); 9 *McQuillin, Municipal Corporations* (*3rd ed.* 1950), 554; 116 *A. L. R.* 120 (1938); 2 *Am. Jur.* 986 (1936); 37 *Am. Jur.* 839 (1941).

Thus, in *City of Ann Arbor v. Riksen*, 284 *Mich.* 284, 279 *N. W.* 513, 116 *A. L. R.* 116 (*Sup. Ct.* 1938), the court held that a proceeding for violation of Ann Arbor's peddlers' ordinance was civil in nature and, upon acquittal, appealable by the city (see *Village of Riverside v. Kuhne*, 335 *Ill. App.* 547, 82 *N. E.* 2d 500 (*App. Ct.* 1948)); on the other hand, in *City of St. Paul v. Stamm*, 106 *Minn.* 81, 118 *N. W.* 154 (*Sup. Ct.* 1908), the court held that a proceeding for violation of a St. Paul ordinance prohibiting the furnishing of food with alcoholic beverages was criminal in nature and, at least in the absence of express legislative authority, not appealable by the city upon acquittal. See *City of Salem v. Read*, 187 *Or.* 437, 211 *P.* 2d 481 (*Sup. Ct.* 1949).

There are many early cases in our State in which civil proceedings were maintained for violations of ordinances. See *Tyler v. Lawson*, 30 *N. J. L.* 120 (*Sup. Ct.* 1862); *McGear v. Woodruff*, 33 *N. J. L.* 213 (*Sup. Ct.* 1868); *Meyer v. Treasurer of Bridgeton*, 37 *N. J. L.* 160 (*Sup. Ct.* 1874); *Brophy v. Perth Amboy*, 44 *N. J. L.* 217 (*E. & A.* 1882); *White v. Neptune City*, 56 *N. J. L.* 222 (*Sup. Ct.* 1893). *Cf. State v. Home Fuel Oil Co. of Ridgewood*, 6 *N. J. Super.* 414, 416 (*Cty. Ct.* 1949). These cases involved the payment of fines and in *Unger v. Fanwood*, 69 *N. J. L.* 548, 550 (*Sup. Ct.* 1903), Justice Van Syckel indicated that if the proceeding was for violation of an ordinance, punishable by imprisonment as well as fine, it would be deemed criminal rather than civil. *Cf. Ramsey v. Basil*, 19 *N. J. Misc.* 555, 556 (*Com. Pl.* 1941). See *Public Torts*, 35 *Harv. L. Rev.* 462, 463 (1922), where the point is made that the provision for punishment by imprisonment makes it clear that the offense is intended to be a crime and governed by principles applicable to criminal proceedings generally. See *State v. Labato*, 7 *N. J.* 137, 147 (1951). But *cf. Huff v. C. W. Goddard Coal and Supply Company*, 106 *N. J. L.* 19, 21 (*Sup. Ct.* 1930); *State v. First Criminal Judicial District Court*, 10 *N. J. Misc.* 723, 724 (*Sup. Ct.* 1932). It may be noted that section 22 of Newark's zoning ordinance

expressly embodies the now customary provision for punishment by imprisonoment, fine, or both.

Since the adoption of our new court rules it has become well established that proceedings in municipal courts for violations of ordinances such as Newark's zoning ordinance are to be governed by the *Rules Governing Practice in the Local Criminal Courts*, and that appeals therein are to be governed by the *Rules Governing Criminal Practice*, particularly *Rule* 2:11 which relates expressly to reviews of judgments in criminal causes in inferior courts of limited jurisdiction. See *State v. Yaccarino*, 3 *N. J.* 291, 295 (1949); *Hill v. Borough of Collingswood*, 9 *N. J.* 369, 378 (1952); *Bd. of Health, Weehawken Tp. v. N. Y. Central R. Co.*, 10 *N. J.* 294, 299 (1952). In the *Yaccarino* case the court stated that procedurally at least, and within the intendment of Rule 2:11, prosecution under Neptune's zoning ordinance was "essentially criminal in nature"; in the *Hill* case the court described proceedings for violation of Collingswood's zoning and Sunday ordinances as *"quasi-criminal"* and governed by *Rule* 8:1 *et seq.* prescribing the practice in the local criminal courts and *Rules* 8:11 and 2:11 prescribing the method of review; and in the recent *N. Y. Central R. Co.* case the court reaffirmed the *Yaccarino* doctrine and pointed out that appeal from a conviction for violation of Weehawken's ordinance to regulate and control air pollution should have been taken under *Rule* 2:11. In the instant matter, Martin properly appealed to the County Court under *Rule* 2:11 and after a trial *de novo* during which oral testimony was taken he was found not guilty. The judgment of the County Court constituted an acquittal and nullified the original judgment in the municipal court. *State v. Hunter*, 12 *N. J. Super.* 128, 131 *(App. Div.* 1951). *Rule* 2:11(*h*)(5) unequivocally provides that if the defendant is acquitted in the County Court he shall be discharged and all fines and costs paid by him shall be ordered returned. No provision authorizing the city to appeal from the judgment of the County Court acquitting the defendant of the charge of violating its ordinance is to be found in *Rule* 2:11.

*Cf. Rule* 1:2–3. On the contrary, *Rule* 2:11(*i*) which pertains to further review after the trial *de novo* in the County Court is deliberately confined to an appeal by "Any defendant against whom a judgment of conviction has been entered." Although *Rules* 4:2–1 and 1:2–3*A* contain general language permitting appeals from the County Court to the Appellate Division, it is clear that in the situation presented to us they must give way to the more specific and controlling language of *Rule* 2:11. *Cf. State v. Yaccarino, supra.* In the light of all of the foregoing we are entirely satisfied that the judgment of acquittal in the County Court after trial *de novo* was intended by the rules to be final and that the city's appeal to the Appellate Division lacked authority and should have been dismissed.

The city advances the additional contention that upon the death of Martin further proceedings abated and his executrix consequently had no status to prosecute the appeal before this court. There are many cases which hold that at common law the death of the defendant, pending appeal from a conviction which is in nature criminal, abated the appeal. See *State v. Stevens,* 133 *N. J. L.* 488, 490 (*Sup. Ct.* 1945); *State v. Levin,* 137 *N. J. L.* 69, 71 (*Sup. Ct.* 1948); *United States v. Mook,* 125 *F. 2d* 706 (2 *Cir.,* 1942); *City of Salem v. Read, supra;* 22 *C. J. S., Criminal Law,* § 165, *p.* 263 (1940); 96 *A. L. R.* 1322 (1935). In the *Stevens* case the defendant, while serving a jail sentence in default of payment of fine on his drunken driving conviction, was released on bail pending *certiorari* to review his conviction; the court held that his death abated the *certiorari* proceedings stating that "The questions raised are now moot, and so do not call for decision." Similarly, in the *Levin* case an appeal from a conviction for breaking and entering was dismissed on the ground that the proceedings had abated by virtue of the defendant's death while serving the reformatory sentence imposed on the conviction. The court pointed out that this represented the general practice at common law, although there were cases in other states involving fines and costs in which it was held that not only the appeal but the prosecu-

tion *ab initio* had abated. See *State v. Kriechbaum*, 219 *Iowa* 457, 258 *N. W.* 110, 96 *A. L. R.* 1317 (*Sup. Ct.* 1934); *United States v. Dunne*, 173 *F.* 254 (9 *Cir.*, 1909). In the *Mook* case the Circuit Court of Appeals for the Second Circuit, while dismissing the appeal because of the defendant's death, remarked that "it may not be amiss to say that it seems to us that the next-of-kin of a convicted person who dies pending an appeal have an interest in clearing his good name, which Congress might well believe would justify a change in the law."

In *Bower v. State*, 135 *N. J. L.* 564, 568 (*Sup. Ct.* 1947), the former Supreme Court soundly held that a defendant could have an erroneous conviction set aside on appeal even though the sentence thereon had been fully served. Chief Justice Case aptly noted that the stigma of conviction did not become moot simply because service of the sentence had been completed. We hold the belief that there is likewise no mootness insofar as the family of a deceased defendant is concerned and that his legal representative should have the opportunity to establish on appeal that the conviction was wrongful. The contrary doctrine would adhere slavishly to an unfair and outmoded procedural concept which our court rules appear to have rejected. See *Rule* 1:2–3A which provides that "Any party, *his legal representative*, or other person damnified or aggrieved by any final judgment rendered in a criminal cause may take an appeal to the appropriate appellate court." *Cf. R. S.* 2:195–6. We consider that the rule may justly be construed as furnishing sufficient authority for review at the behest of Martin's legal representative. Within its intendment the proceedings were in a criminal court and, though the Appellate Division did not enter any final judgment, its determination that the ordinance prohibited Martin's operation of the parking lot was dispositive and, under the circumstances, ripe for appeal. *Cf. Hendrikson v. Koppers Company, Inc.*, 11 *N. J.* 600, 95 *A. 2d* 710 (1953).

The judgment in the Appellate Division is reversed and the judgment of acquittal in the County Court is reinstated.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For affirmance*—None.