MERLIN F. RAINES, PLAINTIFF, v. UNEMPLOYMENT COMPENSATION COMMISSION OF NEW JERSEY, DEFENDANT.

Argued May 6, 1942—Decided September 1, 1942.

Before BROGAN, CHIEF JUSTICE, and Justices PARKER and PORTER.

For the plaintiff, *Louis B. LeDuc, W. Louis Bossle* and *Edward West.*

For the defendant, *Charles A. Malloy* (*Herman D. Ringle,* of counsel).

The opinion of the court was delivered by

BROGAN, CHIEF JUSTICE. The Unemployment Compensation Commission of New Jersey determined that Merlin F. Raines had "attained the status of an employer subject to the provisions of the Unemployment Compensation Law of New Jersey on July 14th, 1940, as of January 1st, 1940." As a consequence, certain contributions were assessed against him by the Commission, plus a penalty for failure to file reports, and interest on the amount assessed.

We allowed *certiorari* to review this finding, and from the return made thereto and the reasons for reversal it appears that the only question involved is whether *section 19 (g) of R. S.* 43:21 is constitutional. That section reads as follows:

"(g) 'Employing unit' means any individual or type of organization, including any partnership, association, trust, estate, joint stock company, insurance company or corporation, whether domestic or foreign, or the receiver, trustee in bankruptcy, trustee or successor thereof, or the legal representative of a deceased person, which has or subsequent to January first, one thousand nine hundred and thirty-six, had in its employ one or more individuals performing services for it within this State. All individuals performing services within this State for any employing unit which maintains two or more separate establishments within this State shall be deemed to be employed by a single employing unit for all the purposes of this chapter. Whenever any employing unit contracts with or has under it any contractor or subcontractor for any employment which is part of its usual trade, occupation, profession, or business, unless the employing unit as well as each such contractor or subcontractor is an employer by reason of subsection (c) of section 43:21-8 of this Title or subsection (h) of this section, the employing unit shall for all the purposes of this chapter be deemed to employ each individual in the employ of each such contractor or subcontractor for each day during which such individual is engaged in performing such employment; except that each such contractor or subcontractor who is an employer by reason of subsection (c) of section 43:21-8 of this Title or subsection (h) of this section, shall alone be liable for the contributions measured by wages payable to individuals in his employ, and except that any employing unit who shall become liable for and pay contributions with respect to individuals in the employ of any such contractor or subcontractor who is not an employer by reason of subsection (c) of section 43:21-8 of this Title or subsection (h) of this section, may recover the same from such contractor or subcontractor. Each individual employed to perform or to assist in performing the

work of any agent or employee of an employing unit shall be deemed to be employed by such employing unit for all the purposes of this chapter, whether such individual was hired or paid directly by such employing unit or by such agent or employee; provided, the employing unit had actual or constructive knowledge of the work."

For the year 1940 Raines, in his affidavit, describes himself as a builder engaged in constructing dwelling houses, and other buildings, under contracts with landowners. It was his custom to use subcontractors, working independently to perform work necessary for the completion of his contract with his principal. Mr. Raines said that, to the best of his knowledge, most of the subcontractors in the work performed by them on his buildings employed less than eight employees. From the correspondence between the representatives of the Commission and Mr. Raines, and the conferences had with him or on his behalf, it is clear that Raines was a "subject employer" under the statute and, therefore, liable for the assessment in question, unless that section of the statute, *supra,* is unconstitutional.

Two reasons for reversal have been filed. The first is that levying and collecting such taxes based upon wages paid by prosecutor's subcontractors to their employees is invalid under our Constitution in that thereby prosecutor's property is not assessed for taxes under general laws or by uniform rules; the second is that taxation thus arrived at violates prosecutor's rights under the Fourteenth Amendment of the Federal Constitution in that the prosecutor is thereby deprived of his property without due process of law and is denied the equal protection of the law.

The argument advanced against the validity of the statute is that the quoted section is at variance with *article IV, section 7, paragraph* 12 of our Constitution, which provides:

"Property shall be assessed for taxes under general laws and by uniform rules according to its true value."

This argument, in our judgment, has no merit. This court held in the case of *Johnson* v. *Asbury Park,* 58 *N. J. L.* 604; *affirmed,* 60 *Id.* 427; 33 *Atl. Rep.* 850; *affirmed,* 39 *Id.* 693, that the constitutional provision in question does not apply

to the legislative power of indirect taxation upon privileges, franchises, trades, and occupations by exacting license fees for the privilege of doing or transacting business, though such power be exercised for revenue purposes.

The second argument is based on the second reason for reversal stated above.

As a preface to determining the question challenging the validity of the statute, it should be helpful to look at the statute as a whole in order to obtain a comprehensive notion of its scope and object.

In 1936 the Unemployment Compensation Commission was created by what is now known as chapter 21 of title 43, R. S., 1937. Its object is obvious. It is plainly one intended to create an economic and social security for our citizens. It is important both to employee and employer since it tends to enhance public welfare. The statute contains many and varied provisions. R. S. 43:21-7 requires an employer subject to the statute to contribute to the fund which is for the relief of workingmen who later become unemployed. The next subdivision (8) provides that an employer subject to the act is obliged to contribute for an entire year if at any time during a calendar year he may be found to be "an employer subject to this chapter," defined in 43:21-9 (h) to be "any employing unit" which for twenty weeks in any year employs eight or more individuals. And an "employing unit," as we have seen (19 (g), supra), is so defined as to include any individual, * * * partnership, * * * corporation * * *, etc., which employs one or more individuals to perform services for it within this State and has under it or associated with it in the work contractors or subcontractors "for any employment which is part of its * * *" (i. e., the employing unit's) "* * * usual trade, occupation, profession or business," unless the employing unit as well as each contractor or subcontractor is "an employer" under the statute, i. e., if eight or more persons are employed by each.

The legislative intention was that the "employing unit" shall be "deemed to employ each individual in the employ of such contractor or subcontractor for each day during which such individual is engaged in performing such employment."

This section, *supra,* also provides that the employing unit may recover from its contractors or subcontractors the contributions it has been called upon to make for employees engaged in the work of such contractor or subcontractor. For example, if A, a builder, has five employees of his own, obviously he is not a "subject employer;" but if he lets out work to two contractors, X, a plumber, and Y, a carpenter, each of whom has three employees, neither of these contractors under the statute being a "subject employer," the provision requires that A make contributions based on eleven employees that attach to him, as it were, if they perform service for twenty weeks in any one year. Thus he becomes a "subject employer."

As we have observed, *supra,* the contractor or subcontractor is ultimately required to meet the contributions levied upon "the employing unit" since the latter may recover the amount of such contributions paid by it on account of the wages paid employees of a contractor or subcontractor who is not an "employer" under the statute. However, if one of these contractors happened to employ eight persons or more in his part of the "usual" work, obviously he would be a "subject employer" himself, and the principal, A, would neither make return nor contribute for such employees.

The main argument made by the prosecutor under the second point is that he is denied the equal protection of the law and deprived of due process because the statute makes him answerable for contributions covering employees of subcontractors, whom he did not hire. It is said that "the subcontractor clause imposes a subclassification," that is, that employers who have less than eight employees are in an exempt class so long as their workmen are not engaged in the usual trade or business of one who is, as such, a "subject employer," or who becomes one by the addition of these extra workmen. This argument we do not think is valid. The classifications are uniform and are distinguished by the characteristics set out in the statute, and all who come within the purview of the classification are included in it. It is not said, nor could it be, that there is any exemption of anyone having the statutory characteristics. The classification

and even the exemption, so-called, are based on a policy and a convenience that are not arbitrary or capricious. Unemployment occurs in places where large numbers are at work rather than in a business or a trade which employs but a few persons. The prosecutor concedes that "the differentiation here is a scientific one." To relieve the public, in whole or in part, from the evil of unemployment is a public good, a great aid to the commonwealth and the citizens generally and if to accomplish that object classifications are made by the legislature, reasonably related to the subject-matter, they may not be rejected as illusory or arbitrary. *Cf. Stewart Machine Co.* v. *Davis,* 301 *U. S.* 548.

And so here all employers of eight or more persons are included in the statute. So, too, are all those who, although they themselves employ less than eight, engage subcontractors who, likewise, employ less than eight persons but who render service at the usual trade, occupation, or business of the first party and the aggregate of persons employed amounts to eight or more.

It is next argued that the section of the statute in question "contravenes the act's basic principle of classification." There is no merit in this in view of what has been said above; but to pursue the example further: while A and B may each have in their direct employ less than eight workmen and, nonetheless, A because he used a subcontractor and his men, is taxed and B is exempt, the reason therefor is a sound basis of classification when it is developed that the former had used eight or more persons in his usual work or trade, while the latter did not.

The prosecutor's next point is that the paragraph of the statute in question is discriminatory. The answer to that argument is: the clause is general and uniform in that it applies to all within its purview.

The next point made is "recovery * * *" (of contributions made) "* * * from the subcontractor does not equalize the contractor's position." Under this it is argued that because the contractor who is compelled to pay the assessment to the state may recover from the subcontractor the statute merely gives him the right to sue, but it does not

restore his expenses of suit. As to this, it is sufficient to say that a litigant suing for a just debt bears the burden of the expense of the suit and the bill of costs is seldom, if ever, sufficient to make him whole. There is a very interesting discussion of this point in *Friedman* v. *American Surety Co.*, 151 *S. W. Rep.* 570. The other points argued under this heading, in which the prosecutor asserts unlawful discrimination against the employer and the employee, have no merit and require no discussion. From what has been said it seems reasonably clear that there is no discrimination.

The next main argument made by the prosecutor is that the imposition of penalties upon the prosecutor for failure to report the wages of subcontractors' employees, which he had no means of ascertaining, is the taking of his property without due proces of law. There is no merit to this argument from a practical or from a legal standpoint. The employer, so-called, is assuredly in a position to know how many men a subcontractor uses in his (the contractor's) usual work. The slightest superintendence would disclose that fact. Men in business know the standard wage rates which prevail in the particular business. If the employer overpays the state he may have a refund. The statute does not impose penalties for not doing the impossible, and it should not be so construed. Raines might have made a tentative, or indefinite, return according to the extent of his knowledge, even if we assume that the subcontractors declined to give him the necessary information. And, if any such situation should arise, the statute contains a provision for process, inquiry, and examination (43:21-11 (i)). This argument, however, is beside the point. The question now argued was not raised before the commission.

It is finally said that the subcontractor clause has no application to a contractor in the improvement of his own land and the Commission's attempt to enforce the act in such case is violative of the Fourteenth Amendment. This, too, is beside the point. It is not an issue in the case before us and, so, ought not to be considered.

The writ will be dismissed, and judgment entered for the respondent, with costs.