77 N.J. Super. 236 (1962)
186 A.2d 113
STATE OF NEW JERSEY, APPELLANT,
v.
PATSY CANNAROZZI, IRVING KAYE, CLASSIC COAT CO., INC., A NEW JERSEY CORPORATION, AND CLASSIC FASHIONS, INC., A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1962.
Decided November 27, 1962.
*237 Before Judges PRICE, SULLIVAN and HERBERT.
Mr. Dominic J. Hart argued the cause for appellant (Mr. Herman D. Ringle on the brief).
No one appeared for defendants-respondents.
The opinion of the court was delivered by HERBERT, J.S.C. (temporarily assigned).
On January 29, 1962, the Municipal Court of Hoboken dismissed eight complaints which had been filed against the defendants. Having been granted leave to appeal directly to this Division under R.R. 2:12-2, the State now argues that the magistrate's decision was erroneous and should be reversed.
Each of the complaints charged a violation of subsection (e) of section 16 of the Unemployment Compensation Law. L. 1936, c. 270, § 16, p. 1079, as amended; N.J.S.A. 43:21-16(e). That subsection provides for punishment by fine or imprisonment of any employer, employing unit or officer or agent of an employing unit who fails to remit to the State, when payable, contributions called for by chapter 21. For present purposes all the complaints may be considered as though identical. There were eight of them, apparently, because that many quarterly payment periods were *238 involved. In three of the periods the defendant Classic Fashions, Inc. filed returns or reports while in the other five the defendant Classic Coat Co., Inc. reported to the State.
No one appeared for the corporate defendants in the municipal court, although counsel did appear for the individual defendants. Pleas of not guilty were entered and there were formal waivers of indictment and trial by jury. The matter was then submitted to the magistrate upon a stipulation of facts which included statements that the defendant corporations were in business and each had employees during the periods in question, timely and correct reports were filed, the individual defendants were officers of the corporations and signed the returns, and the employers' contributions called for by the statute were not remitted to the State; also that the contributions of employees had been remitted and that no allegations of fraud were involved in the case. The tax reports filed for the eight quarterly periods were also submitted as exhibits.
The position taken and arguments made by the defendants who appeared in the lower court are indicated by the following excerpts from the magistrate's decision:
"The defendants moved for a dismissal in the first place and if denied, or in the alternative, a finding of not guilty.

* * * * * * * *
Several points have been considered such as (1) criminal intent (of which there is no proof); (2) fraud (of which there is no allegation or proof); (3) just what category this offense could be in since it is not a misdemeanor or violation of the Disorderly Persons law; (4) why the State waited so long to act (since July 1, 1959); (5) did the Legislature intend such a violation to be criminal; (6) what was the Legislative intent; and (7) does this law come within the purvue of the Constitutional prohibition against imprisonment for debt."
On the stipulated facts a case was presented in which the offenses, if any, were merely a series of failures to pay employers' "contributions" that should have been paid at quarterly intervals in order to comply with the statute. The magistrate adopted the view that the unpaid contributions *239 were in substance debts which the State was attempting to collect, and he concluded that section 16(e) of the Unemployment Compensation Law, because of the provision for imprisonment, conflicts with the N.J. Constitution of 1947, Art. I, par. 13, which contains the mandate: "No person shall be imprisoned for debt in any action, or on any judgment founded upon contract, unless in cases of fraud; * * *." The result reached was stated at the end of the decision in these words: "All complaints against all defendants are dismissed without prejudice."
No challenge has been made to the right of the State to take this appeal; in fact no one has appeared for the defendants and no brief has been filed for them. The State's brief and oral argument by implication have assumed that the case is appealable and that we may review it accordingly.
When the magistrate held a section unconstitutional which, in one form or another, has been in the statutes of our State for over 25 years, he apparently ignored the limits placed about the field in which a lower court properly may deal with constitutionality. He made no mention of those limitations in his written decision. Yet in New Jersey and other states the proposition has been laid down forcefully that inferior courts should assume an act of the Legislature to be constitutional unless it so clearly conflicts with the Constitution as to leave no reasonable doubt of its defectiveness. Legg v. Passaic County, 122 N.J.L. 100, 104 (Sup. Ct. 1939); Neeld v. Automotive Products Credit Assn., 21 N.J. Super. 159 (D. Ct. 1952); 16 C.J.S. Constitutional Law § 93(b), p. 303.
In addition to the questionable use of judicial power by a lower court to rule on constitutionality, the result reached was wrong. The payments which the defendants failed to make and which are called "contributions" in the Unemployment Compensation Law (N.J.S.A. 43:21-19 (f)) are in reality taxes; the authorities leave no sound basis for arguing that they are anything else. Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 57 S.Ct. 868, 81 L.Ed. 1245 *240 (1936); Singer Sewing Machine Co. v. N.J. Unemployment Compensation Comm. &c., 128 N.J.L. 611 (Sup. Ct. 1942), affirmed 130 N.J.L. 173 (E. & A. 1943); Raines v. Unemployment Compensation Comm., 129 N.J.L. 28 (Sup. Ct. 1942), affirmed 129 N.J.L. 387 (E. & A. 1943), cert. denied 319 U.S. 757, 63 S.Ct. 176, 87 L.Ed. 1709 (1943); In re William Akers, Jr. Co., 121 F.2d 846, 135 A.L.R. 1503 (3 Cir.3d 1941). And wherever the question has been raised it appears that courts have agreed in holding that a constitutional provision against imprisonment for "debt," such as we have in Art. I, par. 13 of our Constitution, does not invalidate a statute providing for imprisonment as a penalty for nonpayment of taxes or as a means of enforcing payment. It was so held in Voelkel v. Cincinnati, 112 Ohio St. 374, 147 N.E. 754 (Sup. Ct. 1925), where a thorough discussion of the question, under a clause of the Ohio constitution worded very like our own, may be found. That case is also reported and annotated in 40 A.L.R. 73 et seq. To the cases collected in the cited annotation, Austin v. Seattle, 176 Wash. 654, 30 P.2d 646, 93 A.L.R. 203 (Sup. Ct. 1934) may be added.
Statutes providing imprisonment for taxpayers in default are not uncommon. R.S. 54:4-79 permits a municipal tax collector to arrest and hold a delinquent in jail as a means of collecting personal property taxes. Formerly imprisonment was available to a New Jersey tax collector as a means of enforcing payment of real estate taxes. See Coles v. Platt, 24 N.J.L. 108 (Sup. Ct. 1853), and Bea v. Turner & Co., 115 N.J. Eq. 189, 191 (Ch. 1934). Imprisonment has been authorized in many other jurisdictions. This is indicated by a group of cases in which courts have had to consider whether tax payments in the face of possible arrest were voluntary or involuntary so as to bar, or permit, a taxpayer's attack upon an assessment. See the authorities collected in the following annotations: 64 A.L.R. 9, at page 64 and at pages 72-83, and 84 A.L.R. 294, at page 296. And a famous instance of actual imprisonment for refusal to pay taxes has been reported by the prisoner. Henry D. Thoreau, Civil Disobedience.
*241 There is, however, a real question of the State's right to appeal. Though, as we have already noted, it was not discussed initially, counsel for the State has at our request since the oral argument submitted in writing his reasons for contending the appeal is before us for any action we may think proper. We find them unconvincing. We are in an area where any appeal by the State must be weighed in the light of the constitutional prohibition against double jeopardy. N.J. Const. 1947, Art. I, par. 11. A right to full appellate review in this case would have to depend upon R.R. 1:2-4(c) (2), 2:2-5 and R.R. 3:5-5(b) (7). For our discussion the first two of these rules may be considered merely as cross-references to the third which reads: "Appeal by the State. The State may appeal from an order of the trial court dismissing an indictment or accusation."
Although the magistrate's decision was labeled a "dismissal," it came after the full case had been placed before him on a stipulation of facts and exhibits. The timing of a dismissal drew a comment, though no ruling, from the court in State v. Roller, 29 N.J. 339, 351 (1959). It was said there:
"In State v. Mark, supra, 23 N.J., at page 166, this court gave recent recognition to the authorities sustaining the State's right to appeal under R.R. 3:5-5(b) (7) from a trial court's dismissal of an indictment before trial on the defendant's plea of double jeopardy: it found no occasion (nor do we have such occasion here) to pass on the State's right to appeal from an order of acquittal on a plea of double jeopardy entered during the course of a trial while the defendant is in jeopardy."
A judgment of acquittal entered at the end of a trial on a charge of violating a municipal ordinance is not appealable even though based upon a conclusion that the ordinance in question is inapplicable by its terms or invalid. City of Newark v. Pulverman, 12 N.J. 105 (1953); State v. Fiore, 69 N.J. Super. 122 (App. Div. 1961). Those cases, like the present one, involved decisions for the defendants made after trial and based primarily on rulings of law. Would we be *242 justified in taking the view that full appeals would have been allowed in the Pulverman and Fiore cases if in each of them the judge of the County Court had stated his decision in terms of a dismissal rather than as an acquittal? We think not. Support for this conclusion is found in State v. Mark, 23 N.J. 162, 166, 167 (1957); Bd. of Health of Hillsdale v. Tandy & Allen, Inc., 29 N.J. Super. 61 (Cty Ct. 1953); Peak v. Commonwealth, 171 Va. 535, 199 S.E. 473 (Sup. Ct. App. 1938); Wilson v. Commonwealth, 212 Ky. 584, 279 S.W. 988 (Ct. App. 1926); State v. Hows, 31 Utah 168, 87 P. 163 (Sup. Ct. 1906); and Kleihege v. State, 177 N.E. 60, 70 (Ind. Sup. Ct. 1931, not officially reported).
Unless we accept the proposition that the use of the word "dismissed" by the municipal court in the present case makes judgments appealable which would not be if the word "acquitted" had been used, we must hold on the authority of Pulverman and Fiore that the State has no right of appeal. All of the evidence was presented to the court below and the defendants were placed in jeopardy of a decision against them on facts as well as law. Full appellate consideration of the case and a reversal for further proceedings in the lower court could only put the defendants face to face with a second trial on exactly the same complaints, and on the same or substantially the same evidence as that court had before it when it decided for the defendants on January 29, 1962.
Adopting the thought expressed in State v. Mark, supra, 23 N.J., at p. 167, that the wording of the final order is not sufficiently important to control the issue, we conclude that the decision of the magistrate, made as it was after a full trial, should be given the effect of a judgment of acquittal even though stated as an order of dismissal. Thus R.R. 3:5-5(b) (7) does not authorize the appeal.
Counsel for the State, in a supplementary memorandum, relies heavily upon the words "without prejudice" which appear in the magistrate's statement of his findings: "All complaints against all defendants are dismissed without prejudice." Whether those words were used to indicate an intent *243 to leave an open road to a full appeal and another trial is not important. We are satisfied that a trial court cannot by use of the phrase "without prejudice" take away the constitutional protection given to a defendant who has in fact already been in jeopardy.
The appeal is dismissed. No costs are allowed.