Luana PENNEY, individually, and on behalf of all other citizens similarly situated, Plaintiff,

v.

MUNICIPAL COURT OF CHERRY HILL, TOWNSHIP OF CHERRY HILL, STATE OF NEW JERSEY, and Attorney General of the State of New Jersey, Defendants.

Civ. A. No. 1236-69.

United States District Court,
D. New Jersey.

May 1, 1970.

Leonard H. Wallach, Director Law Clinic of Camden Regional Legal Services, Inc., Camden, N. J., for plaintiff.

George F. Kugler, Jr., Atty. Gen. of New Jersey, by Michael L. Bitterman, Deputy Atty. Gen., Trenton, N. J., for defendants.

Before MARIS, Circuit Judge, and SHAW and COHEN, District Judges.

## OPINION

COHEN, District Judge:

Plaintiff, Luana Penney, brought this purported class action under Rule 23(a) (1) and (3) of the Federal Rules of Civil Procedure, for herself and on behalf of all other citizens similarly situated. Her complaint, seeking injunctive and declaratory relief, demanded the convocation of a three-judge statutory court pursuant to 28 U.S.C. § 2281[1] and § 2284. Under attack is the constitutionality of a section of the New Jersey Disorderly Persons Act, R.S. 2A:170–25.6, N.J.S.A., which provides that:

> "Any person who attempts to commit suicide is a disorderly person." [2]

[1] 28 U.S.C. § 2281 "An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

[2] In New Jersey suicide and attempted suicide were crimes at Common Law. See State v. Carney, 69 N.J.L. 478, 55 A. 44 (Sup.Ct. 1903) and State v. La Fayette, 15 N.J.Misc. 115, 188 A. 918 (C.P. 1937). In 1957, by enactment of the subject statute, the State Legislature downgraded the crime of attempted suicide to a petty offense, i. e., a violation of the Disorderly Persons Act. No reported cases have construed this section of the Act or questioned its constitutionality.

The penalty provided for violation of this statute is a maximum term of imprisonment for six months, a fine of $500.00 or both, plus one jail day for each $5.00 of fine remaining unpaid.[3]

This action arose out of a complaint against plaintiff for violation of the subject statute, which charged her with attempted suicide on or about July 16, 1969 in Cherry Hill Township, New Jersey. Upon trial in the local Municipal Court, plaintiff's counsel moved for a dismissal of the complaint on the ground that the statute in question was unconstitutional and, therefore, an attempted suicide would constitute no offense. Pending a determination of the present action, the Judge of the Municipal Court stayed the trial before him.

It is the plaintiff's contention that the challenged statute is repugnant to the United States Constitution on six grounds: (1) it violates due process because of the inconsistency of treatment in that it punishes a person who attempts suicide while the successful actor is not penalized; (2) it unduly encroaches upon an individual's personal and private freedoms; (3) it contravenes the cruel and unusual punishment prohibition of the Constitution in that it punishes one who is mentally ill; (4) it deprives an individual of his right to waive his constitutional right to life; (5) it is an unreasonable exercise of the State's police power; and (6) it violates the privileges and immunities, the equal protection, and due process provisions of the Federal Constitution and its Amendments. Consequently, maintains the plaintiff, this Court should enjoin the enforcement of the subject statute.

Prior to filing answers here, the defendants, the State of New Jersey, the Municipal Court of Cherry Hill and the Attorney General of New Jersey, moved to dismiss the complaint asserting that it lacked a requisite substantial federal question, therefore, subject matter jurisdiction was wanting; or in the alternative, should this Court find jurisdiction, then urging that it nevertheless should abstain from exercising it.

The threshold question is whether a substantial federal question is presented, thus bringing it within this Court's jurisdiction.

■ This Court has jurisdiction on the basis of both general federal question jurisdiction and specific federal jurisdiction over cases seeking relief for certain specified federal wrongs, 28 U.S.C. §§ 1331, 1343, 2201 and 42 U.S.C. § 1983.

■ After careful consideration, we have reached the conclusion that this Court lacks jurisdiction for want of a substantial federal question. For where the alleged constitutional question is without necessary substance, the complaint will be dismissed. Ford v. Attorney General of Pennsylvania, 184 F. Supp. 129 (E.D.Pa.1960), affirmed 364 U.S. 291, 81 S.Ct. 65, 5 L.Ed.2d 39; Green v. Board of Elections of City of New York, 259 F.Supp. 290 (S.D.N.Y. 1966), affirmed 380 F.2d 445 (2 Cir. 1967), certiorari denied 389 U.S. 1048, 88 S.Ct. 768, 19 L.Ed.2d 840 (1968). As pointed out in *Ford*, an attack upon a state criminal statute is more appropriate in its own courts on the basis that, in the absence of compelling reasons to prevent irreparable loss "both great and immediate," federal courts will not interfere with the enforcement of a state's criminal laws, even though those laws may be unconstitutional.[4] The under lying reason, aside from considerations of comity and abstention, is that both

---

3. Seldom, if ever, is any punishment imposed. Usually, a charged person submits or is committed for psychiatric evaluation and the charge is later dismissed.

4. "It is generally to be assumed that state courts and prosecutors will observe constitutional limitations as expounded by this Court, and that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings." Dombrowski v. Pfister, 380 U.S. 479, 484–485, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965).

procedural and substantive due process are provided for within the states so long as avenues of appeal are left open for ultimate determination.

While it is true, as contended by the plaintiff, that the inferior courts of New Jersey will not determine the constitutionality of the subject statute, but will leave the resolution of such an issue to appellate courts, State In Interest of J. W., 106 N.J.Super. 129, 131, 254 A.2d 334 (Juv. & Dom.Rel.Ct., Union Co. 1969), State v. Cannarozzi, 77 N.J.Super. 236, 239, 186 A.2d 113 (App.Div. 1962), Neeld v. Automotive Products Credit Ass'n., 21 N.J.Super. 159, 90 A.2d 558 (D.C.1952), the avenues for that appellate determination and for post-conviction review are manifestly available, should plaintiff be convicted.

■ Assuming, *arguendo*, that plaintiff has sufficiently alleged a substantial federal question, then abstention would be clearly indicated to afford New Jersey's Courts an opportunity to assess their own state's legislation. The succinct statement of Mr. Chief Justice Stone in the landmark case of Douglas v. City of Jeanette (1943) 319 U.S. 157, at pages 163–164, 63 S.Ct. 877, at pages 880–881, 87 L.Ed. 1324 is remarkably apt:

"It is a familiar rule that courts of equity do not *ordinarily* restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts.

\* \* \* \* \* \*

[T]he state courts are the final arbiters [on the meaning and application of state law], subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the proc-

esses of the criminal law within the state, \* \* \* [is] to be supported only on a showing of danger of irreparable injury 'both great and immediate.'" (Citations omitted; emphasis supplied.)

To like effect see Beal v. Missouri Pacific R. Co., 312 U.S. 45, 49–50, 61 S.Ct. 418, 85 L.Ed. 577 (1940) and Railroad Comm'n. of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1940), declaring the so-called "Pullman Doctrine" of abstention.

■ Moreover, to require plaintiff to test her claimed constitutional right to attempt a self-inflicted death, in a pending State criminal proceeding, would have no "\* \* \* impermissible chilling of the very constitutional right [s]he seeks to protect." See Zwickler v. Koota, 389 U.S. 241, 252, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967). The intrusion of government, by its criminal laws, into the private lives of individuals is fundamental to a regime of orderly liberty and essential to our American scheme of justice. See: Commonwealth v. Leis, 243 N.E.2d 898, 902 (Mass.Sup. Jud.Ct.1969). None of our Constitutional rights is either legally or metaphysically absolute.[5] The exercise of any right must be balanced against the paramount and more compelling interest of society and, therefore, may be restricted or outlawed entirely by a criminal statute in the proper exercise of a state's police power, where the conduct sought to be regulated is legislatively determined to be inimical to the general welfare of the state. Olmstead v. United States, 277 U.S. 438, 48 S.Ct. 564, 72 L. Ed. 944 (1928). There is great disparity among the several states in regard to the laws of suicide.[6] Even England,

---

5. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 391, 57 S.Ct. 578, 81 L.Ed. 703 (1937). Plaintiff contends that her right to life includes a corollary right to terminate it at her will; that it is her individual, personal and private right to *waive* her constitutional right to life, with which society has no right to interfere.

6. See: Schulman, Suicide and Suicide Prevention: A Legal Analysis, 54 A.B.A.J. 855, 856 (1968); and 14 Villanova L.R. 463 (Spring Issue 1969, Student Editor) for two excellent discussions. As stated by Schulman at page 857: "Suicide is a peculiarly human phenomenon. \* \* \* [T]he suicide toll is great. Every minute

where these crimes originated at common law, recently abolished the crimes both of suicide and attempted suicide.[7]

 Furthermore, the declaratory, as well as the injunctive, aspect of the complaint is inappropriate and must fail. For we are not confronted with a state criminal statute, challenged for "vagueness," [8] or for "overbreadth," [9] or for repugnancy on its face to First Amendment rights of freedom of expression which might be "chilled" by any delay in a state proceeding.[10] The case *sub judice* presents none of these. Here, unlike *Zwickler*, a state proceeding is pending, having been temporarily stayed. Past violation is the charge here, while in *Zwickler* the greater concern was with inevitable future violations. Also, only a single violation need be considered by the state courts in entertaining plaintiff's attack upon the constitutionality of the subject statute. There is no problem here, as in *Dombrowski*, of state court confrontation with multiple prosecutions each on differing sets of facts, in determining if constitutional standards have been met by the challenged statute. The instant complaint, both on its face and in effect, does no more than subject plaintiff's conduct to a criminal proceeding brought lawfully and in good faith. The relief sought here is a declaration that the subject statute be declared unconstitutional. Such an *advisory* opinion is inappropriate and should be left to the state courts to be determined within the criminal proceeding itself. *See*: Henderson v. Trailway Bus Co., 194 F.Supp. 423 (D.C.Va.1961), affirmed Robinson v. Hunter, 374 U.S. 488, 83 S.Ct. 1875, 10 L.Ed.2d 1044 (1963); Byers v. Byers, 254 F.2d 205 (5 Cir. 1958); Public Service Comm'n. of Utah v. Wycoff Co.,

344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952); and also Duggins v. Hunt, 323 F.2d 746 (10 Cir. 1963).

For the foregoing reasons, the defendants' motion for an order dismissing the complaint will be granted.

Counsel for the defendants shall submit an appropriate order.

---

someone in the United States either kills himself or tries to kill himself. Sixty or seventy times a day these attempts succeed. Surely self-murder falls within the province of the law." Cf: Roth v. United States, 354 U.S. 476, 501–502, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), Harlan J. concurring.

7. English Suicide Act, 1961, 9 & 10 Eliz. 2, c. 60.

8. Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964).

9. Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

10. Dombrowski v. Pfister, ante n. 3.