123 N.J. Super. 482 (1973)
303 A.2d 610
STATE OF NEW JERSEY, PLAINTIFF,
v.
NATHAN SCHWARCZ, DEFENDANT.
Superior Court of New Jersey, Middlesex County Court, Law Division  Criminal.
Decided April 9, 1973.
*485 Mr. Robert F. Dato, Woodbridge Township Municipal Attorney, for plaintiff.
Mr. Harold G. Cohen argued the cause for the defendant (Messrs. Wilentz, Goldman & Spitzer, attorneys).
SCHWARTZ, J.C.C.
This is an appeal from the Municipal Court of Woodbridge Township where the matter was decided on a stipulation of facts. Defendant, charged with violating "An Ordinance to regulate hours of operating and closing of barber shops etc.," was found "not guilty."
*486 Among other things, it was agreed that "a male patron entered the defendant's barber shop at approximately 7:26 P.M." and "received a haircut thereafter." This violated the closing hour fixed by the ordinance. The stipulation also provided: "Defendant has moved pursuant to R. 7:4-2(e) thereby challenging the ordinance as unconstitutional on its face and as applied."
The municipal court viewed the instant situation "in a different era" vis-a-vis Amodio v. West New York, 133 N.J.L. 220 (Sup. Ct. 1945), and concluded that since the beauty parlor ordinance did not regulate closing hours, it is "basically and intrinsically unfair, so unjust, has no relation to the public health, safety and welfare"; "there is no logical distinction between the two," and considering it unfair to "shun its responsibility" found defendant "not guilty."
The township filed a timely notice of appeal (assuming it had a right to appeal).
Defendant urges finality of the municipal decision on the authority of State v. Cannorozzi, 77 N.J. Super. 236 (App. Div. 1962).
Neither party drew any distinction between a notice of appeal and an application for leave to appeal. R. 3:23 limits the right to appeal from a municipal court to a defendant following conviction, presumably because an acquittal is final. Bd. of Health v. Tandy & Allen, Inc., 29 N.J. Super. 61 (Cty. Ct. 1953). Either party, however, may move to seek leave to appeal to the County Court from an interlocutory order entered before trial R. 3:24. Since the township's only relief in these circumstances could be by way of leave to appeal from an interlocutory order, and defendant plainly sought an interlocutory determination under R. 7:4-2(e), I viewed the notice of appeal as application for leave to appeal. Form should not be exalted over substance. R. 1:1-2.
State v. Cannorozzi, supra, illustrates the frustration of an appellate court unable to correct an unjust and erroneous *487 result where, on a stipulation, as here, a state statute was ruled unconstitutional and the complaint dismissed. R. 3:10-3 was thereafter adopted. It provides that a constitutional question must be raised before trial or after a verdict of guilty. "Such defenses shall not be considered during trial." The rule was intended to prevent repetition of a Cannorozzi result. See Comment to R. 3:10-3.
R. 3:10-3 is made applicable to the municipal court and ordinances by R. 7:4-2(e). Consequently, the constitutional issue decided in the municipal court is appealable. The contention that double jeopardy attaches as in Cannorozzi (the last reported word, in this context, prior to the present R. 3:10-3) is no longer tenable. Cannorozzi held that a judgment of acquittal entered at the end of a trial is not appealable even though based upon a conclusion that the ordinance is inapplicable by its terms or invalid. Here it was a ruling before trial. R. 3:10-3 requires it before trial or after a verdict of guilty, and there was no verdict of guilty here. I granted leave to appeal and "simultaneously [proceeded to] decide the appeal on the merits * * *." See R. 3:24.
The barber shop ordinance regulates hours of opening and closing. The beauty parlor ordinance does not. Thus, defendant urges that barbers are not afforded equal protection of the law; that "in view of the unisexual nature of hairstyling services rendered in both barber shops and beauty parlors" it is discriminatory to leave hours of the latter unregulated. It is said that the "changing cultural milieu" has rendered decisions such as Amodio, supra, and Falco v. Atlantic City, 99 N.J.L. 19 (Sup. Ct. 1923) (while "controlling" and "on point"), antiquated and therefore not controlling as "stare decisis" but "rather for their ratio decidendi" which are equally sound today and support the result sought here in that (the former Supreme Court) held "all persons engaged in the same business are thereby treated alike; are subject to the same restrictions; and are entitled to the same privileges under similar conditions." *488 Falco v. Atlantic City, supra, at 22; "The inquiry is whether there is discrimination against anyone within the prescribed limits of the regulation * * * `[and] if within the sphere of its operation it affects alike all persons similarly situated,' * * *." Amodio, supra, 133 N.J.L. at 220. From this the logic advanced is that men patronize beauty parlors today and therefore it follows that beauty parlors and barber shops are engaged in the same business and are to be treated alike and entitled to the same privileges.
The questions raised are novel. Beauty parlors and barber shops cannot be said to be "engaged in the same business," and a male seeking service and being accommodated in a beauty parlor does not make it so. Is the discrimination "within the prescribed limits of the regulation?" Are all within the sphere of its operation and similarly situated treated alike?
In Amodio v. West New York, supra, it was said:
Nor is the ordinance discriminatory because "beauty parlors and all other businesses, trades and professions are not affected thereby." As noted the exigency in the particular case is for the judgment of the lawmaking power; and, unless there is an utter lack of basis for the classification, the action taken is not discriminatory in the constitutional sense. There is no invidious discrimination merely because the evil may in some degree extend to other occupations. The question of the relative need is essentially one for the legislative judgment. The inquiry is whether there is discrimination against anyone within the prescribed limits of the regulation. Special burdens are often necessary for general benefits; and if the restrictions operate alike upon all persons and property under the same circumstances and conditions, there is no just ground of complaint. [at 226; emphasis added]
This would be dispositive (in a period when men were served only in barbershops) since it is specifically in point. Now, it is said to be anachronistic. The argument rests on the ambiance of our time, on current style. New regulations in New York State "at which men and women can use the same facility to obtain their hairdressing needs" is said to demonstrate this. However, that regulation requires that licensed barbers and hairdressers be employed to perform *489 services requested by male and female patrons and such shops are to provide enclosed booths for privacy of a patron who desires it. Local barber shop regulations in New York are not shown to be inapplicable to a barber shop operating jointly with a beauty parlor under the New York regulation. A clipping (appended to the brief) from the Washington Post of July 16, 1972 also states that "until now, separate licenses were required for a beauty parlor and a barber shop and it was illegal to treat the two sexes together unless separate hours or separate parts of a shop were provided." (Emphasis added).
I find no such comparable provisions in our statutes, i.e., that "it is illegal to treat the two sexes together * * *." Our statutes do not prohibit both men and women from being served on the same premises for such needs, although separate licenses are, in my judgment, impliedly required. N.J.S.A. 45:4-1 et seq. and N.J.S.A. 45:4A-1 et seq. It is noted that such shops do exist, but this is not to say they must.
The new New York regulation 166.27 of Title 19 of the Official Compilation of Codes, Rules and Regulations of the State of New York provides:

Discrimination between patrons on account of sex prohibited.
(a) No shop licensed pursuant to Articles 27 and 28 of the General Business Law shall discriminate between patrons on account of sex. Both male and female patrons may be served and accommodated in either a licensed barber shop or licensed beauty shop provided the owner employs licensed operators in each category to perform the services requested by the patron, in accordance with the qualifications of the operator specified and required by law.
(b) Any such licensed shop employing both licensed barbers and licensed cosmetologists shall provide an enclosed booth to insure the privacy of any patron, male or female, who requests it.
(c) Each such licensed shop employing licensed barbers and licensed cosmetologists shall post a sign, prominently displayed on the exterior of the premises, advertising the fact that services may be provided to both male and female patrons. [Emphasis added]
This does not support defendant. It is implicit (from the news clipping and the regulation submitted) that in *490 New York a hair styler (beautician) was not licensed to serve men prior to the new regulation, nor is it sanctioned under the new regulation. Men and women can use the same facility under the new regulation provided both "licensed barbers and licensed cosmetologists" are employed "in each category to perform the service  in accordance with the qualifications of the operator specified and required by law." The New York regulation referred to does not require the conclusion of unlawful discrimination or of deprivation of a constitutional right here. It does underscore the fact that theretofore a female was required to patronize one and a male the other. Nor does the New York regulation in any way compel such treatment of both sexes together, nor curtail the power of reasonable local regulation of each activity. It provides that "both male and female patrons may be served," "provided the owner employs licensed operators in each category." Moreover, the recognition in New York of a need for legislation to meet a reasonable requirement there would not ipso facto render a local regulation in this State unreasonably discriminatory. It is noted, too, that a shop operating under dual licenses "shall" post a sign that "services may be provided to both male and female patrons." One apparent reason for this would be for the customer preferring privacy.
A beauty parlor serving a male performs the time-honored service of a barber and, in my opinion, is subject to the license requirement (certificate of registration) for a barber as well as local regulatory provisions in this State.
The advent of a "unisex" trend is stressed as demanding a new constitutional approach.
As noted above, it is not the male customer whose right is being directly espoused but the barber shop operator (who inferably suffers from competition when he must be closed). However, the male customer's rights are involved incidentally. Does he have such right to be served in a beauty parlor? I have found no authority, nor has any been suggested, which holds that a licensed beauty parlor is required *491 by law to serve a male patron. I hold that, excepting for a manicure, the statutory requirements for barbers and barber shops and ordinances regulating them must be met to lawfully serve a male.
It is said that "the distinction between a beauty parlor and a barber shop is a product of a byegone era * * *."
The Legislature has treated beauty parlors (N.J.S.A. 45:4A-5) separately from that of barbers (N.J.S.A. 45:4-28). It has made a distinction. The licenses and other indicia of authority are discrete requirements. "The Legislature is presumed to know the needs of the people and it may draw distinction based upon degrees of evil without being arbitrary." Fried v. Kervick, 34 N.J. 68, 75 (1961). The statute dealing with beauty culture clearly implies service of women except in the one instance where (by definition of "beauty culture") a male may be a patron for a manicure (N.J.S.A. 45:4A-5).[1] Moreover, the beauty parlor ordinance of the township limits service to those "performed upon women." The statutory definition of a barber shop clearly implies service to men when, for example, it refers to "shaving or trimming the beard." N.J.S.A. 45:4-28. While similarities in the occupations are apparent and differences, in some instances, may be viewed as shadowy, it is for the legislative body to fix a new policy, i.e., that one license shall be sufficient to serve men or women. It is a legislative function to appraise the need and determine the remedy. Thorp v. Bd. of Trustees of Schools for Industrial Ed., 6 N.J. 498, 514 (1951). "If there is a rational basis for a * * * requirement in furtherance of the public welfare, the constitutional issue must be resolved in favor of the legislative power to ordain it." Kennedy v. Newark, 29 N.J. 178, 183 (1959). In Kennedy it was also urged that changed circumstances demonstrated that an earlier ordinance was unreasonable. The court said this "may well invite *492 the thoughtful consideration of the city government," but "the power and responsibility are vested in another agency of government.[2] The judiciary cannot exercise that power directly nor indirectly by measuring the policy determination by a judge's private view." (At 185).
Traditionally at least, the distinction was not debatable. Men repaired to barber shops, while women indulged in the beauty parlor. The unisex thesis is not persuasive.[3] Neither the Legislature nor local government is required to promptly meet each change in style or fancy. It would be a monumental task; instability would result. Rights would rest on quite a precarious foundation. Generally, both ordinances and statutes are governed by the same rules of interpretation. Wright v. Vogt, 7 N.J. 1 (1951).
Equal protection is not denied because a regulatory statute might have gone farther than it did, or might have included some persons or classes of persons who were excluded. Regulatory need in a particular field may appear to the legislative mind in different dimensions and proportions; as more acute in one area than in another. Consequently the reform may proceed one step at a time, addressing itself to the aspect of the problem which seems the most pressing. The Legislature may feel that a sufficiently identifiable group or class of people operating partly or wholly in the field under consideration and already subject to some regulation does not present the same problem as those seeking to practice in the field without having met any publicly imposed standards of competence. In short, equal protection does not demand immediate logical tidiness; nor is it violated because the legislation as enacted does not bring about the full reform or result intended to be produced. In an area of many competing pressures the constitution is satisfied if the Legislature, in responding to what it conceived to be living facts calling for regulation, did not disregard reason in drawing its lines. That those lines might have been drawn more suitably in light of the whole *493 problem is not a matter for judicial re-examination. Classification is a perennial and difficult problem, capable of no doctrinaire solution. Basically the solution resides in the legislative domain and the judiciary will not intrude unless the classes established for separate treatment represent invidious discrimination, that is, treatment which has no rational basis in relation to the specific objective of the regulatory legislation. [N.J. Chapter, Amer. Institute of Planners, v. N.J. State Board of Professional Planners, 48 N.J. 581, 602 (1967)]
Assuming, arguendo, that beauty parlors' opening and closing hours need attention in this locality, is the validity of the barber shop ordinance jeopardized? I think not. There is a strong presumption of constitutionality. W.H.Y.Y., Inc. v. Glassboro, 50 N.J. 6, 13 (1969). The lawmaking body may hit the evil where it is felt most. N.J. Restaurant Ass'n v. Holderman, 24 N.J. 295, 300 (1957). To declare a statute unconstitutional is a judicial power that is delicately exercised. Wilentz v. Hendrickson, 133 N.J. Eq. 447, 487 (Ch. 1943), aff'd 135 N.J. Eq. 244 (E. & A. 1944).
We have no evidence of the purpose, reasoning, or objectives of these ordinances. Defendant has not established absence of need for a distinction beyond a reasonable doubt. "It is true that a classification may not be arbitrary, but the burden of proof is on him who asserts an unjust and illegal discrimination." W.H.Y.Y., Inc., supra, 50 N.J. at 13. And the burden is an extremely formidable one. N.J. Restaurant Ass'n v. Holderman, supra, 24 N.J. at 300. We are concerned here with public interest in the limited sphere of a municipality. Local conditions may be a factor. For example, barber shops may need special attention or beauty parlors may not open as early as barber shops, and the health rationale supporting Amodio is as valid today as in 1945. Distinctions will be presumed to rest upon a rational basis "if there be any conceivable state of facts which would afford reasonable support for them." Wilson v. Long Branch, 27 N.J. 360, 377 (1958). And even if validity is fairly debatable the legislative judgment should *494 be allowed to control. Katobimar Realty Co. v. Webster, 20 N.J. 114 (1955).
The Legislature need not regulate all or none. N.J. Chapter, Amer. Institute of Planners v. N.J. State Board of Prof. Planners, supra, 48 N.J. at 601.
As long as the class is reasonably selected there is no invidious discrimination. W.H.Y.Y., Inc., supra, 50 N.J. at 13. "It does not matter that the restriction directly serves a particular class, if thereby the interest of the community at large is also served * * * there is no infringement of the due process clauses."
A statute will not be declared void unless its repugnancy to the Constitution is so manifest as to leave no room for doubt. See Fried v. Kervick, supra.
I find no merit to other conclusions drawn by defendant, i.e., that a beauty parlor could employ a licensed barber and thus evade the closing hour regulation of barber shops. In my judgment it could not. I hold that a beauty parlor serving a male after barber shop hours, whether it employs a licensed barber or not, violates the ordinance.
The male trend to seek tonsorial needs in a beauty parlor raises the specter of economic loss to the barber. My analysis of beauty parlor authority places the solution of the unfair competition feature of defendant's position, in enforcement of the barber shop ordinance and licensing requirements against a beauty parlor which transgresses them. In any case, if the classification is within lawful bounds, a burden on the class regulated is not denial of equal protection. Cf. Gilman v. Newark, 73 N.J. Super. 562, 585, 586 (Law Div. 1962). And cf. Borland v. Bayonne Hospital, 122 N.J. Super. 387 (App. Div. 1973), where it was said "the fact that in so doing, the plaintiff * * * has been put at a competitive disadvantage does no violence to the Constitution." (p. 18). It must be borne for the general welfare.
It is argued that the Law Against Discrimination, N.J.S.A. 10:5-1 et seq., prohibits distinction on the basis *495 of sex in the "opportunity to obtain employment, and to obtain all the accommodations * * * of any place of public accommodation * * *."
Paterson Tavern & Grill Owners Ass'n v. Hawthorne, 57 N.J. 180 (1970), is submitted as illustrating the "current irrelevance of antiquated reasoning * * * when the ratio decidendi have been attenuated by time and changed circumstances." Paterson, supra, dealt with an ordinance that prohibited employment of female bartenders and held (at 186) it to be an unreasonable exercise of the police power "in the light of current customs and mores." In passing, the court there stated that the "intended scope of the statute (N.J.S.A. 10:1-1) is not entirely clear." But it was "never intended to bar reasonable police power discriminations." (At 183; emphasis added). (N.J.S.A. 10:5-4 was not mentioned in Paterson, but the intention cannot be distinguished). The court held the restriction unreasonable and beyond the public need "in the current climate." It dealt with right to employment.
The opportunity to obtain employment or housing accommodations without invidious distinction is not involved here. Other considerations plainly apply.
N.J.S.A. 10:1-3 and 10:5-4 appear to overlap to some extent. Whatever the scope or sphere in which each act was designed to operate, it is clear that reasonable exercise of the police power was not intended to be curtailed. A proviso is noted in N.J.S.A. 10:1-3 which permits restriction of accommodations to individuals of one sex "reasonably restricted exclusively to individuals of one sex." This seems to but codify the concept that reasonable police power discrimination will not transgress civil or constitutional rights. N.J.S.A. 10:5-4 does not have the express proviso. However, that which is clearly implied is as much a part of the law as that which is expressed. "A statute often speaks as plainly by inference as by express words." Juzek v. Hackensack Water Co., 48 N.J. 302, 314-315 (1966). Moreover, N.J.S.A. 10:1-3 and 10:5-4 should *496 be read in pari materia. They are both embraced statutorily by the rubric of civil rights. It would be an astonishing proposition that men have a civil or constitutional right to be accepted at a women's spa, gymnasium, bath house or the YWCA.
Reasonable discrimination on the basis of sex is violative of no lawful right. N.J.S.A. 10:1-3 recognizes this.
The right of privacy suggests itself as a relevant consideration. It has not been raised or argued. Query: Are women entitled to that right in these circumstances? I have found no authority fitting the facts here.
The barber shop licensee must rest his general thesis on the subordinate proposition that a male customer has a constitutional right to receive his needs in a beauty parlor (not licensed as a barber shop). Assuming this to have merit, is he not met by the equally viable and countervailing constitutional right of women to enjoy privacy?
"It is now well settled that the right of privacy having its origin in natural law, is immutable and absolute, and transcends the power of any authority to change or abolish it." See Pavesich v. New England Life Ins. Co., 122 Ga. 190, 50 S.E. 68, 69 L.R.A. 101 (Sup. Ct. 1905). It is one of the natural unalienable rights our State Constitution recognized in Art. I, par. 1. McGovern v. Van Riper, 137 N.J. Eq. 24, aff'd 137 N.J. Eq. 548 (E. & A. 1945). (The 1947 Constitutional language is similar).
I do not believe it is necessary to pursue this aspect.
It is my opinion that the principle of autrefois acquit does not apply here; that the ordinance is a reasonable exercise of the police power, and that defendant is not deprived of any civil or constitutional right.
Submit an order consistent herewith including remand for disposition of the charge laid in the complaint.
NOTES
[1] This is not to say males have an unqualified right to demand it.
[2] The Legislature thereafter acted in this area.
[3] It is literally a misnomer as applied here. It has been defined as "of only one sex"  "having only one type of sexual organ." American Heritage Dictionary of the English Language (1969). The physical distinction between men and women is fixed and permanent "as far as human eye can see." An ephemeral fad or fancy cannot alter the fact.